No. 55,477

STATE OF KANSAS, *ex rel.* RICHARD J. ROME, *Appellant,* v. JAMES FOUNTAIN and JOSEPH P. O'SULLIVAN, III, *Appellees.*

(678 P.2d 146)

Opinion filed February 18, 1984.

*Richard J. Rome,* of Hutchinson, argued the cause and was on the briefs *pro se* for the appellant.

*Charles K. Hyter,* of Hutchinson, argued the cause and was on the brief for the appellee, James Fountain.

*William L. Mitchell,* of Mitchell and Henry, of Hutchinson, argued the cause and was on the briefs for the appellee, Joseph P. O'Sullivan, III.

The opinion of the court was delivered

*Per Curiam:* This is a consolidated appeal of two criminal cases in which defendants, James Fountain and Joseph P. O'Sullivan, III, were each charged with multiple counts of perjury (K.S.A. 21-3805). For purposes of this appeal, the facts are undisputed and essentially are as follows: On March 9, 1981, Richard J. Rome filed two criminal complaints in Reno County District Court against the defendants. At the time the complaints were filed, Fountain was the sheriff of Reno County, and O'Sullivan was the county attorney. The perjury charges were based upon statements made by the defendants at a hearing before the Kansas Commission on Judicial Qualifications which at the time was investigating Rome's alleged misconduct as a judge. Rome was subsequently removed from his position as Associate District Judge of the 27th Judicial District. *State ex rel. Comm'n on*

*Judicial Qualifications v. Rome,* 229 Kan. 195, 623 P.2d 1307, *cert. denied* 454 U.S. 830 (1981).

Upon the filing of the complaints, Associate District Judge William F. Lyle, Jr. ordered that a notice be issued to each defendant directing him to appear before the court on March 20, 1981. Prior to that date, each defendant moved to quash the complaint. The March 20 hearing was continued after all judges of the 27th Judicial District recused themselves. Following various delays, Judge Richard W. Wahl of the 12th Judicial District was assigned to hear the case on November 5, 1981. Prior to the assignment of Judge Wahl, defendant O'Sullivan resigned as Reno County attorney on September 7, 1981. He was replaced by Joseph L. McCarville, III, on September 29, 1981. Judge Wahl requested briefs from all of the parties on the issues presented in defendants' motions to quash the complaints. Counsel for the defendants requested oral argument. A hearing was held on December 14, 1981. Rome did not attend that hearing, having chosen to present his arguments and authorities by his written brief. It is important to note that James Flory, a deputy attorney general, appeared on behalf of the county attorney, McCarville, and the attorney general. At the close of the oral arguments, Judge Wahl entered an order quashing the complaints. A journal entry was not filed until January 28, 1982. On January 6, 1982, Rome filed a motion to set aside the order quashing the complaints. A hearing was held on March 29, 1982, at which time Rome's motion was denied. On April 28, 1982, Rome filed a notice of appeal from the order quashing the complaints. Thereafter, there were difficulties in docketing the appeal, because no journal entry had yet been filed. The appeal was dismissed by Judge Wahl, because of Rome's failure to properly docket the appeal. The appeal was finally docketed with the Court of Appeals, and the parties were ordered to submit memoranda demonstrating that court's jurisdiction. The case was subsequently transferred to the Supreme Court.

The defendants maintain that the appeal by Rome must be dismissed because this court lacks jurisdiction to hear the appeal. In support of their position, defendants argue (1) that Rome failed to file a timely notice of appeal; (2) that the order of the district court which denied Rome's *motion to set aside the order dismissing the complaint* is not an appealable order; and (3) that Rome, as the complaining witness, does not have standing to

maintain the appeal. Although there may be legitimate issues raised as to all three contentions, we have concluded that this case should be disposed of on the basis that Rome, as the complaining witness, did not have standing to institute or maintain an appeal in this case, and, therefore, this court has no jurisdiction. Simply stated the issue is this: Where a district court dismisses a criminal complaint, does the complaining witness have the right to take an appeal from the order of dismissal to an appellate court? We have concluded that he does not and that this appeal must be dismissed for want of jurisdiction.

At the outset, we must note the general rule that the right to appeal is statutory and, in the absence of a statute which authorizes an appeal, an appeal is not available to the losing party in the district court. *State v. Crozier,* 225 Kan. 120, 587 P.2d 331 (1978). Clearly, there is no specific statute in Kansas which permits the complaining witness to appeal from an order of a district court dismissing a complaint in a criminal case. Furthermore, a review of the Kansas statutes and court decisions handed down during the course of our judicial history demonstrates the fact that it has been consistently recognized that a private individual has no right to prosecute another for crime and no right to control any criminal prosecution when one is instituted. Thus, the philosophy of this state has always been that a criminal prosecution is a state affair and the control of it is in the public prosecutor. *Jackson v. State,* 4 Kan. *150 (1867); *State v. Wilson,* 24 Kan. *189 (1880). This doctrine has been restated many times during the past century. We note, for example, the following cases: *State v. Wells,* 54 Kan. 161, 165, 37 Pac. 1005 (1894); *State v. Brown,* 63 Kan. 262, 65 Pac. 213 (1901); *In re Broadhead,* 74 Kan. 401, 86 Pac. 458 (1906).

In *Foley v. Ham,* 102 Kan. 66, 169 Pac. 183 (1917), an examining magistrate refused to dismiss a criminal prosecution on the motion of the county attorney. Foley, the person charged in the complaint, then brought an action in the district court against the justice of peace and the complaining witness and his attorney asking that the defendants be enjoined from further prosecution of the case. The district court issued an injunction against the maintenance of the criminal prosecution. The defendants appealed. In the course of the opinion, Justice Mason noted that the public prosecutor, except as restrained by statute, has ab-

solute control of criminal prosecutions, and has authority by virtue of his office to dismiss a criminal action regardless of the attitude of the court. The court recognized, however, that a Kansas statute provided that, in extreme cases, the court could compel a county attorney to file an information. The court further stated that the county attorney is the representative of the State in criminal prosecutions in his county. In this regard, the court on pages 69-70 of the opinion describes the role of the public prosecutor in the following language:

"The state is the plaintiff, and the state's attorney, rather than the complaining witness or any other unofficial person, is entitled to speak in its behalf, and decide upon the course to be pursued in its interest.

" 'Unquestionably, a private individual has no longer any right to prosecute another for crime—no right to control any criminal prosecution when once instituted. A criminal prosecution is a state affair, and the control of it is in the public prosecutor. . . . The purpose of a public prosecution is to prevent the use of the criminal law to gratify private malice or accomplish personal gain. This purpose is fully subserved when the control of the case is with the county attorney.' (*State v. Wilson,* 24 Kan. 189, 192.)

" 'The law makes it the duty of the county attorney to conduct criminal prosecutions on behalf of the state, and all steps in the trial are alike under his supervision and control.' (*The State v. Wells,* 54 Kan. 161, 165, 37 Pac. 1005.)

" 'No one but the county attorney, or the attorney-general on proper occasion, or persons deputized by them, may control prosecutions within a county.' (*The State v. Snelling,* 71 Kan. 499, 506, 80 Pac. 966.)

"It is true that this interpretation of the law places in the hands of the county attorney a very large power, which is susceptible of abuse. That, however, is a necessary attribute of most governmental powers. In the case of a public officer some protection is afforded by statutes making official misconduct a crime (Gen. Stat. 1915, § 3588), and a basis for ouster (Gen. Stat. 1915, § 7603). The other theory—that the control of a felony prosecution until it reaches the district court, so far as a plaintiff may exercise control, rests with the prosecuting witness, or with any one who is under no official responsibility—would imply that the county attorney might be seriously embarrassed in the attempted enforcement of the criminal law by the interference of individuals, actuated by mistaken judgment or perverse purpose. For instance, a private prosecutor, if in charge of a preliminary examination upon a charge of gambling, might call the keeper of the gambling house and permit him to give such testimony as under the statute (Gen. Stat. 1915, § 3652) would result in his own complete immunity. Clearly the selection of witnesses to be used in that manner should rest with the county attorney, and not with individuals or with the justice of the peace. The power effectively to control a prosecution involves the power to determine when and before what tribunal it shall be brought and maintained, and therefore, whether it should be discontinued. We conclude that the justice of the peace should have acted upon the direction of the county attorney and dismissed the case."

In *State, ex rel., v. Court of Coffeyville,* 123 Kan. 774, 256 Pac.

804 (1927), the rule is stated that, while the county attorney is not required to appear and conduct the prosecution of a misdemeanor case in a justice of the peace court unless requested to do so by the magistrate or the complainant, if he does appear he is entitled to have full charge of the prosecution, and the case should be dismissed if he so directs.

In 1968, in *State v. Kilpatrick,* 201 Kan. 6, 17, 439 P.2d 99 (1968), the complainant in this case, Richard J. Rome, as county attorney of Reno County, appeared on behalf of the state in a criminal appeal before the Supreme Court. The case involved a claim of denial of equal protection of the law under the Fourteenth Amendment to the United States Constitution, because Rome, as county attorney, had dismissed the original charges of first-degree murder and forcible rape filed against a coparticipant in the crime and had reduced the charges to a lesser included offense. In the course of the opinion, the Supreme Court stated that the county attorney is the representative of the state in criminal prosecutions, and as such he controls these prosecutions. He has the authority to dismiss any charge or to reduce any charge. He can prosecute against one defendant if he so chooses, and he can decide not to prosecute against another defendant.

The power of the county attorney to determine the charges to be filed against a defendant in a particular case was upheld in *State v. Pruett,* 213 Kan. 41, 515 P.2d 1051 (1973), where it is stated in the opinion that, when the prosecutor exercises his discretion as to the charges to be filed or as to amendments of the information seeking to reduce the charges to lesser offenses, the trial judge has no right to substitute his judgment for that of the prosecutor absent some compelling reason to protect the rights of the defendant. The county attorney is the representative of the state in criminal prosecutions, and as such he controls them. The principle is restated again more recently in *State v. Turner,* 223 Kan. 707, 709, 576 P.2d 644 (1978); *State v. Marshall & Brown-Sidorowicz,* 2 Kan. App. 2d 182, 577 P.2d 803, *rev. denied* 225 Kan. 846 (1978); and *State ex rel. Miller v. Richardson,* 229 Kan. 234, 623 P.2d 1317 (1981).

The philosophy of these cases was incorporated into the Kansas Code of Criminal Procedure (K.S.A. 22-2101 *et seq.*) which was enacted in 1970. We note, for example, that K.S.A. 22-2104

provides that all prosecutions for violations of the criminal laws of this state shall be in the name of the State of Kansas. K.S.A. 22-2202(19) defines the term, "prosecuting attorney" to mean any attorney who is authorized by law to appear for and on behalf of the State of Kansas in a criminal case, and *includes the attorney general, an assistant attorney general, the county or district attorney, an assistant county or district attorney,* and *any special prosecutor whose appearance is approved by the court.* The term "prosecuting attorney" does not include the complaining witness in a criminal action.

K.S.A. 22-2301 provides, in substance, that, unless otherwise provided by law, a prosecution shall be commenced by filing a complaint with a magistrate. A copy of the complaint shall forthwith be supplied to the county attorney of the county. The Judicial Council note to this section states that, "Although the section does not require that the person filing the complaint have the prior approval of the county attorney, it contemplates that the officer be notified forthwith." In this action, the district court and all parties are in complete agreement that Richard J. Rome, as the complaining witness, had the right under this section to commence the prosecution by filing his complaint with the district court. We note, however, that K.S.A. 22-3201(6) requires the prosecuting attorney to endorse the names of all witnesses known to said attorney upon the complaint, information, and indictment at the time of filing the same. This action is required so that the person charged with the offense will know, prior to trial, the names of the witnesses to appear against him.

Appeals by the State in criminal cases are covered by K.S.A. 22-3602(*b*) which declares that appeals to the Supreme Court may be taken by the prosecution from the district court in three instances:

(1) From an order dismissing a complaint, information or indictment;

(2) from an order arresting judgment; and

(3) upon a question reserved by the prosecution.

There is no provision which authorizes an appeal to be taken by the complaining witness. In passing, we note K.S.A. 22-3802, which permits the district court to tax all costs of the prosecution against the complaining witness if, upon hearing, the court

determines that the prosecution was instituted without probable cause and from malicious motives.

There are other statutes which should properly be considered in determining the issue raised in this case. K.S.A. 19-702 declares that it shall be the *duty of the county attorney to appear* and prosecute or defend on behalf of the people all suits, civil or criminal, arising under the laws of this state, in which the state or the county is a party or interested. K.S.A. 19-711 states that, in the absence, sickness or disability of both the county attorney and his deputy, the court may appoint an attorney to act as county attorney. In case of a vacancy in the office of county attorney, K.S.A. 19-715 permits the district judges of the judicial district in which the county is located to appoint a temporary county attorney until a person is appointed by the governor. K.S.A. 19-717 authorizes the prosecuting witness to employ, at his own expense, an attorney to assist the county attorney to perform his duty in a criminal action. This special attorney is required to be recognized by the county attorney and court as associate counsel, and it is provided that no prosecution shall be dismissed over the objection of such counsel until the reason of the county attorney for such dismissal, together with the objections of such associate counsel shall be filed in writing, argued by counsel, and fully considered by the court. This statute does not give to the associate counsel the right to take an appeal to an appellate court from an order dismissing the case. Finally, we should note K.S.A. 19-723, which authorizes the county commissioners to employ an additional attorney at law to assist the county attorney in the investigation or prosecution of any civil or criminal matter involving the duties of the county attorney.

A review of the cases and statutes set forth above leads us to the conclusion that, although a complaining witness may institute a prosecution by filing a complaint with an authorized magistrate, the county or district attorney must be notified of the complaint and, when he or she appears in the case, takes over the prosecution on behalf of the state. Although the complaining witness does have the right to employ private counsel to assist the county attorney, the ultimate prosecution of the case remains at all times in the hands of the public prosecutor. This public policy is consistent with that traditionally adopted throughout this country. As noted in the ABA Standards Relating to The Prosecution Function, pp. 19-20 (Approved Draft 1971), "Our

nation began with resistance to oppressive official conduct and our traditions, embodied in the national and state constitutions, demand that the prosecutor accord basic fairness to all persons. Because of the power he wields, we impose on him a special duty to protect the innocent and to safeguard the rights guaranteed to all, including those who may be guilty. The conflicting demands on a prosecutor may exert pressures on him which his sense of fairness as a lawyer rejects. Both his public responsibilities as well as his obligations as a member of the bar require that he be something more than a partisan advocate intent on winning cases."

Standard 2.1 of the Prosecution Function, adopted by the American Bar Association, states, without equivocation, that the prosecution function should be performed by a *public* prosecutor who is a lawyer subject to the standards of professional conduct and discipline. In the commentary under this section we find the following comments:

"The concept that the state has a special interest in the prosecution of criminal cases which requires the presence of a professionally trained advocate arose during the formative period of American law. Earlier, in England, it had been assumed that prosecution was a matter for the victim, his family or friends. [Citation omitted.] The idea that the criminal law, unlike other branches of the law such as contract and property, is designed to vindicate public rather than private interests is now firmly established. The participation of a responsible public officer in the decision to prosecute and in the prosecution of the charge gives greater assurance that the rights of the accused will be respected than is the case when the victim controls the process. Almost all prosecutions of a serious nature in this country now involve a professional prosecutor. The absence of a trained prosecution official risks abuse or casual and unauthorized administrative practices and dispositions which are not consonant with our traditions of justice. . . .

"In a few jurisdictions a private party may bring a prosecution without the participation of the prosecutor. [Citation omitted.] This practice carries danger of vindictive use of the processes of criminal law, without the check provided by the participation of a public prosecutor. Standard 2.1 is designed to discourage the practice of police or private prosecution by the adoption of appropriate legislation to require the participation of a prosecutor in all criminal cases except regulatory violations of a minor nature."

Appellant does not cite us a single case where the right of a private individual to appeal on behalf of the State in a criminal case has been upheld in any court in this country. To the contrary, our research has revealed only one published opinion in an American appellate court where that issue has been raised