No. 55,914

STATE OF KANSAS, *Petitioner,* v. RICHARD J. ROME, *Respondent.*

(685 P.2d 290)

Opinion filed June 8, 1984.

*Roger N. Walter,* disciplinary counsel, argued the cause and was on the brief for the petitioner.

*Raymond F. Berkley,* of Hutchinson, argued the cause and was on the brief for the respondent.

*Per Curiam:* This is an attorney discipline proceeding pertaining to the conduct of Richard J. Rome.

The origins of this controversy stem from events of years past. Richard J. Rome was admitted to the Bar of Kansas in 1961. He successfully served as Reno County attorney for a number of years. He later served as assistant U.S. district attorney for one year.

Kansas amended the judicial article to the Constitution in 1972. It provided for the nonpartisan selection of judges on a local option basis. Reno County opted for nonpartisan selection. Richard J. Rome was selected as an associate district judge in 1973. Subsequently, he became interested in returning Reno County to partisan election of judges. In 1974 Judge Rome insensitively wrote a decision in rhyme concerning women. He was censured. See *In re Rome,* 218 Kan. 198, 542 P.2d 676 (1975).

In 1978, while Richard Rome was president of the Reno County Bar Association, a vote was taken by that bar association on the issue of partisan election of judges. The vote was strongly in favor of nonpartisan selection, which was counter to the desire of Rome. Judge Rome's reaction to the vote was vindictive. He later advised an attorney who was seeking probation for a client, that the client's "fate was sealed" by her previous attorney's vote at the bar meeting.

That action coupled with other misconduct on the part of Rome caused a judicial qualifications complaint to be filed against him. After proper procedural due process, Richard Rome was ruled disqualified from serving as an associate district judge and was removed February 10, 1981. See *State ex rel Comm'n on Judicial Qualifications v. Rome,* 229 Kan. 195, 623 P.2d 1307, *cert. denied* 454 U.S. 830, *reh. denied* 454 U.S. 1094 (1981).

Rome brought an injunction action in the U.S. District Court of Kansas to enjoin his ouster. He lost and appealed to the 10th Circuit where the appeal was dismissed. He then sued the members of this court for damages in federal court. Upon an adverse ruling he again appealed, which appeal is now pending.

This action originated in the investigation of Richard Rome's

judicial misconduct but pertains only to Rome's conduct after his removal from the judiciary.

In 1979, Edward G. Collister, legal counsel to the Commission on Judicial Qualifications, was conducting the investigation into alleged judicial misconduct of Richard J. Rome. Mr. Collister subpoenaed Joseph P. O'Sullivan III, and consequently took his deposition on October 3, 1979. At the time O'Sullivan was the Reno County attorney. Mr. O'Sullivan was subpoenaed for the deposition because Judge Rome had listed him as a potential witness in his upcoming hearing before the Commission on Judicial Qualifications. As a result of information obtained during O'Sullivan's deposition, James Fountain, Reno County sheriff, was also interviewed by Mr. Collister. Mr. Fountain gave a sworn statement to Mr. Collister on October 4, 1979.

On November 6, 1979, and again on April 28, 1980, O'Sullivan and Fountain testified in hearings before the Judicial Qualifications Commission concerning misconduct of Rome. Both O'Sullivan's and Fountain's testimony in part concerned an alleged occurrence where Rome challenged Sheriff Fountain to a fight. In his testimony before the Commission, Judge Rome denied the alleged occurrence and contended the county attorney and the sheriff conspired against him.

The Commission found that on January 5, 1978. Respondent made the statement challenging Sheriff Fountain to a fight. Rome's removal as judge was then recommended and his removal followed, as previously stated.

On March 9, 1981, at 1:30 p.m., the Judicial Nominating Commission for the 27th Judicial District convened to consider potential nominees for the position of associate district judge vacated by Judge Rome. Joseph O'Sullivan III, the county attorney, was one of the potential nominees.

On the morning of March 9, 1981, at 10:52 a.m., a few hours prior to the judicial nominating committee hearing, Respondent, as complaining witness, filed two criminal cases in the Reno County District Court. One action, *State ex rel. Richard Rome v. O'Sullivan,* case No. 81-CR-118, alleged three counts of perjury against Joseph O'Sullivan III. The second, *State ex rel. Richard Rome v. Fountain,* case No. 81-CR-117, alleged two counts of perjury against James Fountain. The allegations of perjury were based upon the testimony given by Fountain and O'Sullivan in

their sworn statements to Edward Collister on October 3 and 4, 1979.

In the case against O'Sullivan, Rome alleged O'Sullivan had falsely testified when he expressed his opinion that Rome in a preliminary hearing on a criminal case held the State to a beyond a reasonable doubt standard of proof. The complaint also alleged O'Sullivan perjured himself when he expressed the opinion that Judge Rome displayed favoritism to certain attorneys appearing before him. The final allegation of perjury was O'Sullivan's testimony that Rome admitted to O'Sullivan he had challenged Sheriff Fountain to a fight.

In the complaint against Fountain, it was alleged Fountain falsely testified when he recounted to Collister what an unidentified third person had related to him concerning a statement made by Rome in the third person's presence. Fountain admitted in the course of his statement that he had no personal knowledge as to whether Rome ever made the alleged comment.

The second count of the complaint alleged Sheriff Fountain perjured himself when he testified that Rome had challenged him to a fight. In his statement the sheriff recalled the event as occurring in September or October of 1978. When testifying before the Commission on Judicial Qualifications on April 28, 1980, Fountain corrected his prior statement and indicated the event occurred on January 5, 1978.

Respondent Rome did not consult with or obtain the consent of the county attorney or the attorney general before filing the complaints.

Respondent personally presented both complaints to the district court on the morning of March 9, 1981, and requested they be filed. Respondent expressed his opinion to the district court judge that O'Sullivan and Fountain lied under oath. The judge did not make an independent examination of the evidence, nor did he read the transcripts presented by Respondent which allegedly formed the basis of the perjury; rather, he accepted Respondent's word that the perjury occurred. The judge recognized that most of the allegations concerned opinion testimony which he believed could not be the basis for perjury allegations. He attempted to dissuade Rome from filing the complaints, but Respondent persisted in his efforts. The judge, after having Rome swear to the allegations of the complaints,

allowed the complaints to be filed. Rome then requested the issuance of arrest warrants. The judge directed instead that notices to appear be issued to both O'Sullivan and Fountain.

Sometime before noon on March 9, 1981, Robert Mackey, News Director for WKHK radio station, Hutchinson, received an anonymous phone call advising him of the existence of the complaints against O'Sullivan and Fountain. On the same date, also prior to noon, Dan Deming, News Director for KWBW radio station, Hutchinson, received an anonymous phone call advising him of the existence of the complaints. The filing of the complaints received considerable attention in the local news media. Information concerning the complaint was broadcast on the noon news of the local radio stations, and published in the afternoon edition of the Hutchinson News on March 9, 1981.

Thereafter, both Fountain and O'Sullivan filed motions to quash the complaints. Respondent sought no involvement of the county attorney but rather continued to pursue the prosecution of these complaints as the complaining witness pro se. Respondent filed a written argument and brief in opposition to the motions to quash.

After briefing by all parties, Fountain's and O'Sullivan's motions to quash came for oral argument on December 14, 1981, before the court. Judge Richard Wahl of the 12th Judicial District was assigned to hear the cases. Both defendants appeared with their counsel. Also appearing was Joe McCarville, the new Reno County attorney, and James Flory, a deputy attorney general for the State of Kansas. Respondent did not appear. Judge Wahl dismissed both complaints and made the following findings:

"1. The complaints are essentially couched in the language of the statute claimed to be violated, perjury. No affidavits were filed with the complaints. No sworn testimony was adduced with the filing of the complaints. The complaints do not contain sufficient factual information to enable a magistrate to make an impartial and detached finding of probable cause upon which a warrant or a summons could issue.

"2. No copy of the complaint was supplied to the county attorney, nor was any apparent effort made to have the court appoint some attorney to act as county attorney. The complaining witness immediately presumed to act as prosecutor and titled the complaint in the name of the State of Kansas on the relation of Richard J. Rome. He is a private citizen and cannot conduct any criminal prosecution in the name of the state. As an attorney he could have been appointed by the court in the absence or disqualification of the county attorney were he not the complaining witness or otherwise interested in the prosecution.

As the complaining witness he could not be appointed as the prosecuting attorney by the court.

.  .  .  .

"4. The argument of the complaining witness in his brief centers around the right of a citizen to sign a complaint. No one contends that a citizen does not have that right. The problem here is that the citizen then proceeded to conduct the prosecution personally in the name of the State of Kansas, and that he cannot do.

.  .  .  .

"6. The complaints filed in these cases are wholly inadequate under the requirements which the Kansas Supreme Court defined in Wilbanks against State, 224 Kan. 66. The notice to appear has no efficacy at all. It served no legal purpose. The motions to quash the complaints should be sustained.

.  .  .  .

"11. The complaints filed in each of these cases should be quashed. The stated defendants should be released from any obligation under them.
"12. As an attorney and former Judge, the complaining witness should be charged with full knowledge of the impropriety of the procedures which he set in motion and in which he was the principal actor."

Respondent filed a motion to set aside the order of dismissal. This request was denied. On April 28, 1982, Respondent filed a notice of appeal in both cases. The appeal, however, was never docketed pursuant to Supreme Court Rule No. 2.04 (232 Kan. c). On February 14, 1983, Judge Wahl dismissed the appeal for failure of Respondent to docket them.

On February 15, 1983, Respondent applied to the Court of Appeals to reinstate his appeal of the perjury case. On March 1, 1983, the formal complaint in this disciplinary proceeding was filed. On March 9, 1983, Rome's motion to reinstate the appeal was denied. A second request for reconsideration was filed on May 20, 1983. The appeal was finally docketed on June 9, 1983, and transferred to this court. On February 18, 1984, we dismissed the appeal and awarded costs and attorney fees to Fountain and O'Sullivan. See *State ex rel. Rome v. Fountain,* 234 Kan. 943, 678 P.2d 146 (1984).

The hearing on the complaint against Rome before the Kansas Board for Discipline of Attorneys was held May 23 and 24, 1983, after the original dismissal of the appeal and prior to its docketing. The disciplinary complaint alleged Respondent had commenced the perjury cases knowing the charges were unwarranted and for the purpose of harassing and maliciously injuring O'Sullivan. In addition to the criminal cases concerning perjury, the disciplinary complaint alleged Respondent had also commenced civil actions against both Fountain and O'Sullivan for

the purpose of harassment and malicious injury. This civil litigation was *Sumner v. Yoder Township, et al.,* case No. 81-C-219, and *Chansler v. Reno County Public Works, et al.,* case No. 81-1459.

*Sumner* was commenced in the district court of Reno County, on May 22, 1981. It involved a dispute between Sumner, a landowner, and Yoder Township over the placement of Sumner's fenceposts. The Township contended the fenceposts were in its right-of-way and must be moved. Sumner refused to move the posts. The Township eventually attempted to remove the posts without Sumner's permission.

Mr. Sumner contacted O'Sullivan and asked whether the Township could remove the posts. O'Sullivan, in his capacity as county attorney, informed Sumner if the posts were in the right-of-way, the Township was required to remove them. When the Township attempted to remove the posts, Sumner's wife interfered. A sheriff's deputy at the scene phoned O'Sullivan and requested advice. O'Sullivan advised the deputy that both parties had counsel and the deputy was not to make any decision as to the property rights involved. The deputy was instructed only to preserve the peace and insure no one was injured. This was O'Sullivan's only involvement in the case. Respondent, on behalf of Sumner, commenced suit against the Township and named O'Sullivan as a defendant. The judge eventually ordered the Township to remove the posts.

*Chansler* was filed in the United States District Court for the District of Kansas. Respondent commenced that action on behalf of Chansler on September 3, 1981. The case concerned Chansler's discharge from employment with the Reno County Public Works Department. The suit named O'Sullivan as a party defendant and alleged he conspired to violate the plaintiff's civil rights. O'Sullivan's sole involvement was in providing advice to a representative of the public works department who was drafting a response to a labor union grievance filed by Ms. Chansler after her termination. The action filed by the respondent was dismissed at the close of plaintiff's evidence on defendant's motion for directed verdict.

The complaint against Rome in this case was initiated by O'Sullivan and investigated for the Kansas Board of Discipline of Attorneys by D. W. Wheeler, a Marion attorney. After the May

hearing on the matter, the hearing panel found Respondent had violated D.R. 1-102(A)(6) (232 Kan. clxxv) in that he:

"(1) Prepared and directed the filing of case number 81 CR 118, State of Kansas ex rel Richard J. Rome against Joseph P. O'Sullivan III, in the District Court of Reno County, Kansas and case number 81 CR 117 being the State of Kansas ex rel Richard J. Rome against James Fountain, in the District Court of Reno County, Kansas, with knowledge and experience that such were groundless and could not be proven, failing to maintain the integrity of Respondent in a manner and with a purpose reflecting on being entrusted with the duties and responsibilities belonging to the office of an attorney."

The panel recommended Respondent receive public censure and filed a report on July 20, 1983. On August 13, 1983, Respondent filed written exceptions to the report.

Respondent's first argument is that all of the justices of this court should recuse themselves from this case. The reasons given for this request are the court's involvement in the removal of Respondent from his judicial seat; a lawsuit which is pending before the United States District Court in which Respondent is plaintiff and this court is a defendant; and finally, because Respondent is in favor of the partisan election of all judges and this court is allegedly "on record for its opposition to the election of judges by the people . . . ." The grounds for judicial disqualification are stated in the rules relating to judicial conduct, Rule 601, Canon 3C (1), 232 Kan. cciii-cciv. These rules are:

"(1)   A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
(b) he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
(c) he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
(d) he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
    (i) is a party to the proceeding, or an officer, director, or trustee of a party;
    (ii) is acting as a lawyer in the proceeding."

None of the reasons require the disqualification of any member of this court in this case. We are charged in K.S.A. 7-103 with supervision of the practice of law. To permit the filing of a suit against members of this court to disqualify them from discharging that statutory duty would nullify it and permit manipulation of the court.

Respondent next argues he was denied procedural due process during the investigation stage of this disciplinary case. The report of the person appointed by the Disciplinary Administrator to investigate the complaint against respondent included information concerning *Sumner v. Yoder Township, et al.,* and *Chansler v. Reno County Public Works, et al.,* the two cases previously discussed in which Respondent was involved as plaintiffs' counsel and O'Sullivan was a defendant. Respondent claims since he was not asked about these cases by the investigator, he was denied due process. He argues if given the opportunity to explain the circumstances of those two cases to the investigator, the "outcome of the review committee's action would have been different," since "[t]hey never had the benefit of Respondent's views or his presentation of the files in their entirety." Respondent also argues he was further denied due process since he did not receive a copy of the investigator's report until a few days before the hearing.

Petitioner, the State of Kansas, admits the investigator did not inquire about the two civil cases when he spoke with Respondent, but claims Respondent was still afforded procedural due process.

It is undisputed procedural due process is required in lawyer disciplinary proceedings. This has been interpreted to require notice of the charges to afford a meaningful opportunity for explanation and defense. *In re Ruffalo,* 390 U.S. 544, 550, 20 L.Ed.2d 117, 88 S.Ct. 1222, *reh. denied* 391 U.S. 961 (1968). This rule is recognized in Kansas. See, *e.g., State v. Turner,* 217 Kan. 574, 538 P.2d 966 (1975), and *State v. Alvey,* 215 Kan. 460, 524 P.2d 747 (1974).

On March 1, 1983, Respondent was given a copy of the formal charges, which included allegations of unethical conduct by his action in the two civil cases. The hearing on the formal complaint was May 23, 1983. Thus, Respondent was afforded almost three months advance notice that his action in the two civil cases

would be considered in assessing his professional conduct at the May hearing.

The United States Supreme Court in *Hannah v. Larche,* 363 U.S. 420, 4 L.Ed.2d 1307, 80 S.Ct. 1502 (1960), considered the constitutional requirements owed by an agency during an investigation. That court held an efficient investigation would not be conducted by an agency "if persons being investigated were permitted to convert the investigation into a trial." The court further held individuals who are investigated by agencies and who will be "accorded all the traditional judicial safeguards at a subsequent adjudicative proceeding," cannot successfully complain they were not given procedural due process. 363 U.S. at 446. Such is the case here. Respondent was afforded every element of due process by receipt of the formal notice three months prior to hearing and the opportunity to thoroughly explain the circumstances of the two civil cases and presentation of his files on the matters at the disciplinary hearing. The failure of the investigator to inquire of the respondent as to the civil cases prior to the hearing was not a denial of procedural due process. A person under investigation has no constitutional due process right to conduct the inquiry or to control its scope so long as he has notice of the charges prior to the adjudicative hearing.

Respondent also argues the hearing panel abused its discretion by determining it would proceed with the disciplinary action against Respondent, despite the fact the criminal perjury charges, alleged in the formal disciplinary complaint against Respondent as frivolous, were not then final.

The criminal perjury actions were filed in March, 1981. After their dismissal in December, 1981, an appeal was taken but was not docketed until June, 1983, after the disciplinary hearing. The appeal was heard by this court and an opinion adverse to Respondent's position was filed February 18, 1984.

At the commencement of the disciplinary hearing on May 23, 1983, the Respondent requested the disciplinary matter be continued until the other court cases involving O'Sullivan and Fountain were concluded. The hearing panel overruled the request pursuant to Supreme Court Rule 214, 232 Kan. clxix. This rule provides:

"Proceeding of complaints shall not be deferred or abated because of substantial similarity to the material allegations of pending civil or criminal litigation, unless authorized by a review committee or hearing panel."

Respondent contends the failure of the hearing panel to continue the matter was an abuse of discretion.

The State argues it was not an abuse of discretion because the jurisdictional status of Respondent's appeal on the criminal perjury matters appeared tenuous. On February 8, 1983, O'Sullivan and Fountain moved the district court to dismiss the appeal of the criminal cases since Respondent had failed to docket them. The court sustained the motion and dismissed the appeal on February 14, 1983. On February 15, 1983, Respondent filed with the district court a motion requesting the Court of Appeals to reinstate the appeal. The motion was denied on March 9, 1983, for lack of jurisdiction. On May 20, 1983, the Respondent filed a motion asking the Court of Appeals to reconsider the application to reinstate the appeal. This motion was still pending on May 23, 1983, the day the hearing on Respondent's disciplinary charges began. It was also on May 23, 1983, that the hearing panel refused to continue the disciplinary proceedings until after the final adjudication of the appeal. The State contends due to the tenuous status of the appeal, the hearing panel should not have been required to postpone the disciplinary proceeding, but was allowed to act within its discretion under Supreme Court Rule 214 (232 Kan. clxix).

Petitioner also argues the ethical question of professional misconduct and the issues presented in the pending criminal appeal were separate and distinct since the issue on appeal involved the standing of Respondent to bring criminal charges. The ultimate issue in the appeal, however, was the issue involved in the disciplinary case. The question was whether the Respondent abused the judicial process as a personal tool of revenge to maliciously injure another *without justification under the law*. The appeal might have been resolved with a ruling that Respondent was justified under the law in bringing the criminal charges. Thus, the disciplinary hearing panel determined the same issue as this court — the legality of Respondent's acts. We find, however, no abuse of discretion in this case. If this court's ruling in the criminal appeal would have been favorable to Respondent, he would have had ample opportunity for either rehearing before the disciplinary panel or review of the panel's recommendation by this court in light of the favorable appeals prior to disciplinary penalties being assessed.

Respondent next argues the bringing of the disciplinary action by O'Sullivan constituted a collateral attack of the criminal proceedings against him. This collateral attack is alleged to have deprived Respondent of equal protection, due process, and the right to petition the government for the redress of grievances. The basis for respondent's argument is the bringing of the disciplinary complaint occurred while the criminal cases were on appeal to the Court of Appeals.

The criminal complaints were dismissed by the trial court on December 14, 1981, sixteen months prior to the filing of the formal complaint. Although a notice of appeal was filed by Respondent on April 28, 1982, no action was taken to pursue the appeal until after the disciplinary complaint had been investigated, and referred for prosecution. While the gravamen of the disciplinary charge against Respondent involved the criminal charges, there is no evidence this constituted a collateral attack or in any way violated any of Respondent's constitutional rights. The record is void of any demonstration of such prejudice. Rome's argument on this point is unsupported.

He further alleges the panel's findings are contrary to the law and evidence. Respondent argues he had the right as a private citizen to bring the perjury charges. The State argues the perjury charges were groundless and brought only with the intent to harass O'Sullivan and Fountain. Both parties argue the substance of the perjury charges, which need not be discussed here since that issue has previously been decided by this court. *State ex rel. Rome v. Fountain,* 234 Kan. 943, 678 P.2d 146 (1984). In that decision this court held respondent had no right as a private citizen to pursue the prosecution of criminal cases and further held the cases were frivolous and brought for the purpose of harassment. The facts presented in that case were substantially the same as those presented to the hearing panel in this case.

It is well recognized in Kansas that to warrant a finding of misconduct of an attorney, the charges must be established by substantial, clear, convincing and satisfactory evidence. *State v. Scott,* 230 Kan. 564, 570, 639 P.2d 1131 (1982). In this case there was clear and convincing evidence of the Respondent's misconduct. The hearing panel correctly weighed the evidence when it found the two criminal cases filed by respondent "were brought

with knowledge and experience that such were groundless and could not be proven." This issue is without merit.

Respondent next argues he conducted himself professionally and within his rights as a private citizen in bringing the perjury charges against O'Sullivan and Fountain. Respondent argues he followed all the legal requirements in filing the criminal complaints. While this is true, the problem is the Respondent went beyond his right to file the complaints and also sought to prosecute, which is not a right afforded private citizens. Also, Respondent was a former associate district judge and had served as county attorney. With such experience Respondent knew his actions were improper in that the cases were frivolous. An attorney may not divorce himself from his ethical obligations as an attorney when acting as a private citizen. He or she must always uphold the attorneys' oath not to bring "groundless or unjust suits." Supreme Court Rule 702(i), 232 Kan. ccxx. Although Rome complied with the legal technicalities in bringing the criminal complaints, there was no meritorious basis for the perjury complaints. Respondent failed to conduct himself professionally and went beyond his rights as a private individual.

Respondent argues the recommended discipline of public censure is unwarranted. This court has carefully considered the facts in this case and determined under all the circumstances the panel recommendation of public censure is quite lenient. In *State v. Scott*, 230 Kan. 564, 571, we enumerated the instances where public censure was proper. We conclude the panel's recommendation of public censure appropriate for the misconduct of Respondent.

IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED by the court that Richard J. Rome be and he is hereby publicly censured by this court. The costs of this proceeding are taxed against the Respondent and are ordered paid forthwith.