THE HONORABLE PAUL S. GOLDMAN, DISTRICT JUDGE, EIGHTH JUDICIAL DISTRICT COURT, CLARK COUNTY, NEVADA, Appellant, *v.* RICHARD H. BRYAN, GOVERNOR OF THE STATE OF NEVADA, Respondent.

No. 18259

THE HONORABLE PAUL S. GOLDMAN, DISTRICT JUDGE, EIGHTH JUDICIAL DISTRICT COURT, IN AND FOR THE COUNTY OF CLARK, STATE OF NEVADA, Appellant, *v.* THE NEVADA COMMISSION ON JUDICIAL DISCIPLINE, Respondent.

No. 18326

November 28, 1988                    764 P.2d 1296

---

[2]The Honorable E. M. Gunderson, Chief Justice, did not participate in the decision of this appeal.

*Frank J. Cremen,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, *William Isaeff,* Chief Deputy Attorney General, Carson City, for Respondent Governor Richard Bryan.

*Eugene J. Wait, Jr.,* Reno, for Respondent Nevada Commission on Judicial Discipline.

646

## OPINION

By the Court, ZENOFF, Sr. J.:[1]

These are separate appeals from an order of the district court denying appellant's petition for a writ of mandamus (Docket No. 18259), and a decision of the Nevada Commission on Judicial Discipline removing appellant from his judicial office for willful misconduct and habitual intemperance (Docket No. 18326). Appellant has moved to disqualify JUSTICE YOUNG and JUSTICE STEFFEN from sitting in review of the merits of these appeals. On October 4, 1988, this court entered an order consolidating these matters for the sole purpose of resolving appellant's motions. Further, in the order of October 4, 1988, both JUSTICES YOUNG and STEFFEN noted their opposition to appellant's motions and stated that they harbored no "animus, bias or prejudice toward appellant whatever." Accordingly, the justices determined that

---

[1]Pursuant to orders of this court entered September 14, 1988, and October 4, 1988, SENIOR JUSTICE DAVID ZENOFF presided over the court's resolution of appellant's motions, in the place of CHIEF JUSTICE E. M. GUNDERSON. *See also* Nev. Const. art. 6, § 19(1)(a) and 19(1)(c), and SCR 10.

they could not properly disqualify themselves from the proceedings in question, and ordered that a hearing be held before an independent panel of unchallenged Nevada judges. Subsequently, pursuant to that order, a hearing on appellant's motions was conducted on November 16, 1988, before the undersigned senior justice and district judges, against whom the parties have tendered no challenges respecting bias or partiality. *See* NRS 1.225(4). Having heard and considered the arguments of counsel, and for the reasons set forth below, we hereby deny appellant's motions.

## FACTS

On October 19, 1986, in accordance with Article 6, § 19(1) of the Nevada Constitution, then CHIEF JUSTICE JOHN C. MOWBRAY, with the unanimous endorsement of the other justices of the Nevada Supreme Court, entered an "Administrative Order" which provided as follows:[2]

> It appearing appropriate to the administration of justice, it is hereby:
>
> ORDERED that, until further order of this Court, the Honorable Paul S. Goldman, District Judge, shall not hear consider or decide any matter of any kind, whether civil or criminal, contested or uncontested, in court or in chambers, and shall not otherwise exercise any of his judicial prerogatives, except as hereinafter provided. Nev. Const., art. 6, § 19(1).
>
> FURTHER ORDERED that, as necessary to accommodate the interests of justice, the Chief Judge of the Eighth Judicial District Court shall reassign to other judges of the District any cases now assigned for trial or hearing before the Honorable Paul S. Goldman.[3]

---

[2]Nev. Const. art. 6, § 19(1) provides in part that "[t]he chief justice is the administrative head of the court system."

[3]We observe that, thereafter, appellant never formally challenged or requested the court to rescind its administrative order, under which appellant continued to collect his full salary and receive the emoluments of his office, and remained at liberty to use his chambers and any staff support to which he was entitled by virtue of his position. Thus, contrary to appellant's assertion, the order did not purport to "suspend" or "remove" appellant from his elected position, but merely reapportioned the public's judicial business in the interest of the administration of justice, and directed the Chief Judge of the Eighth Judicial District Court to reassign such business to other district judges "as [was] necessary to accommodate the interest of justice." This we think CHIEF JUSTICE MOWBRAY, with the concurrence of the other justices clearly was entitled to order under the circumstances, pursuant to their constitutionally granted authority to administer the court system.

The court's administrative order was entered in response to a series of events culminating in appellant's issuance of an unlawful order jailing a Las Vegas metropolitan police commander, purportedly for contempt of court. *See* Cunningham v. District Court, 102 Nev. 551, 729 P.2d 1328 (1986). Additionally, the supreme court's order followed the receipt of appellant's letter of October 16, 1986, advising then CHIEF JUSTICE MOWBRAY:

> Pursuant to Article Six of the Nevada Constitution, I hereby ask the Court to temporarily relieve me of my responsibility to act on any matters presently pending before me.

On October 30, 1986, appellant directed a letter to Governor Richard Bryan, advising the Governor of his desire to tender a formal notice of retirement pursuant to the provisions of NRS 3.092(3).[4] Appellant asserted that he was "permanently incapacitated for medical reasons to perform the duties" of his office, and requested the Governor to appoint three physicians to examine him in accordance with that provision. Subsequently, however, the Attorney General of the State of Nevada advised the Governor that complaints respecting appellant's performance in office were "pending or impending" against appellant before the Nevada Commission on Judicial Discipline. *See* Nev. Const. art. 6, § 21 (authorizing the commission to determine the question of a judge's entitlement to permanent disability retirement). Upon receipt of that information, the Governor thereafter refrained from exercising his authority pursuant to NRS 3.092(3) and, instead, deferred to the commission's jurisdiction over the question of appellant's entitlement to disability status.

On April 22, 1987, appellant filed a petition for a writ of mandamus in the First Judicial District Court seeking to compel the Governor to appoint the requested medical panel. During the proceedings that followed in the district court, the Governor attempted to introduce, as evidence in support of the various defenses raised to appellant's petition, a document executed by JUSTICE STEFFEN entitled, "Certificate In Lieu of Record." As discussed below, in that document, JUSTICE STEFFEN formally certified and described certain facts, in lieu of a record of the court's inquiry which preceded its administrative order of October 19, 1986. *See, e.g.,* NRAP 10(c),(e) (in the absence of a report of the evidence or proceedings, a statement of the evidence

---

[4]NRS 3.092(3) provides in part that any judge who desires to retire voluntarily shall notify the Governor who shall appoint three physicians to conduct an examination and to report their opinions as to whether the judge is permanently incapacitated, mentally or physically.

or proceedings may be certified in lieu of a record). Appellant primarily bases the instant challenge to JUSTICE STEFFEN's impartiality upon the facts disclosed in the certificate in lieu of record.

Appellant's challenge to JUSTICE YOUNG's impartiality is primarily based on the facts contained in a letter written by JUSTICE YOUNG on May 14, 1987. The letter was in response to an inquiry from JUSTICE YOUNG's brother, District Judge Llewellyn A. Young (President of the Nevada District Judges Association), concerning the history leading up to the court's administrative order of October 19, 1986. As set forth below, we conclude that neither the facts disclosed in the certificate in lieu of record, nor in JUSTICE YOUNG's letter, are sufficient to establish legally cognizable grounds warranting the disqualification of JUSTICE YOUNG or JUSTICE STEFFEN from these proceedings.

## DISCUSSION

At the outset, we observe that "a judge has as great an obligation not to disqualify himself, when there is no occasion to do so, as he has to do so in the presence of valid reasons." Amidon v. State, 604 P.2d 575, 577 (Alaska 1979), *citing* In Re Union Leader Corp., 292 F.2d 381, 391 (1st Cir. 1961), *cert. denied,* 368 U.S. 927. Thus, this court has previously held that a judge has "a duty to preside . . . in the absence of some statute, rule of court, ethical standard, or other compelling reason to the contrary." *See* Ham v. District Court, 93 Nev. 409, 566 P.2d 420 (1977); *see also* United States v. Diorio, 451 F.2d 21, 24 (2d Cir. 1971), *cert. denied,* 405 U.S. 955 (1972); Wolfson v. Palmieri, 396 F.2d 121, 124 (2d Cir. 1968); Rosen v. Sugarman, 357 F.2d 794, 797-98 (2d Cir. 1966). Moreover, where, as here, a judge or justice determines that he may not voluntarily disqualify himself, his decision should be given "substantial weight," and should not be overturned in the absence of a clear abuse of discretion. *See* United States v. Haldeman, 559 F.2d 31, 139 (D.C.Cir. 1976), *cert. denied,* 431 U.S. 933 (1977); *Amidon,* 604 P.2d at 577. Further, under these circumstances, a judge or justice is presumed not to be biased, and the burden is on the party asserting the challenge to establish sufficient factual grounds warranting disqualification. Ritter v. Bd. of Com'rs of Adams County, Etc., 637 P.2d 940, 946 (Wash. 1981). With these general principles in mind, we turn to an analysis of the factual allegations of bias that appellant has tendered against each justice.

## I. CHALLENGE TO JUSTICE YOUNG

First, appellant's motions urge the disqualification of JUSTICE

YOUNG on the ground of "actual bias and prejudice and/or implied bias." Under NRS 1.225(2), disqualification of a justice of the supreme court on the ground of implied bias is warranted where (1) a justice is a party to or interested in the action or proceeding; (2) a justice has been counsel to a party in the particular proceeding; or (3) a justice is related to a party or an attorney for a party in the proceeding. Appellant has set forth no facts supporting a reasonable inference that JUSTICE YOUNG entertains implied bias against appellant as defined by NRS 1.225(2). Consequently, we conclude that appellant has failed to state a legally cognizable challenge to JUSTICE YOUNG on that ground. *See, e.g.*, State v. Logan, 689 P.2d 778, 783 (Kan. 1984) (where no factual grounds are alleged in support of an opinion or belief that bias exists, the challenge states no legally cognizable ground for disqualification).

Second, appellant asserts that JUSTICE YOUNG should be disqualified for actual bias and prejudice pursuant to the provisions of NRS 1.225 and the Nevada Code of Judicial Conduct Canon 3. Appellant maintains that the facts disclosed in a letter authored by JUSTICE YOUNG demonstrate that JUSTICE YOUNG has taken a position adverse to appellant on the merits of these appeals. Specifically, appellant asserts that in his letter, JUSTICE YOUNG defended "actions taken against [appellant] and voiced an opinion as to the correctness of those actions." Thus, appellant maintains that JUSTICE YOUNG's "impartiality might reasonably be questioned." We disagree.

Initially, we note that the letter in question must be viewed in the context of the circumstances and events under which JUSTICE YOUNG felt constrained to write. As noted, JUSTICE YOUNG's letter was written in response to an inquiry from his brother, District Judge Llewellyn A. Young (President of the Nevada District Judges Association), indicating that certain misconceptions had been fostered within the Nevada judiciary respecting the entry of the supreme court's administrative order of October 19, 1986, providing that temporarily appellant should not perform adjudicatory functions. We consider it within the purview of the justices of the supreme court, in the exercise of their proper official functions, to attempt to disabuse concerned members of the Nevada judiciary of incorrect beliefs that had been fostered among them respecting the procedures of the court. *Cf.* Nev. Code of Judicial Conduct Canon 3A(6) (a judge is not prohibited from making public statements in the course of his judicial duties or "from explaining for public information the procedures of the court"); *see also* Nev. Code of Judicial Conduct Canon 7B(1)(c)

(a judge may answer allegations directed against his record in office).

In our view, the letter in no manner expressed an opinion as to the merits or the outcome of any ongoing proceedings in which appellant was involved. Specifically, it contains absolutely no expression of opinion as to the merits of the pending appeal from Judge Fondi's decision in favor of respondent Governor Bryan. Additionally, the letter provides no factual support for appellant's conclusory allegations that JUSTICE YOUNG expressed or possessed an opinion as to the correctness of the commission's rulings, that he defended those rulings in his letter, or that he had formed an opinion on what those rulings should be. The letter simply relates facts that came to the attention of the justices through the judicial process and in connection with the court's constitutional obligation, through its Chief Justice, to administer the judicial system in this state. *See* Nev. Const. art. 6, § 19; *see also* Nev. Code of Judicial Conduct Canon 3B(1) and (3) (a judge should facilitate performance of administrative responsibilities of other judges and should report serious unprofessional conduct of a judge to appropriate disciplinary body). Accordingly, we conclude that appellant has failed to allege or specify sufficient legally cognizable facts warranting JUSTICE YOUNG's disqualification on the grounds of actual bias or prejudice. *See* United States v. Grinnell Corp., 384 U.S. 563, 583 (1966) (alleged bias must stem from an extrajudicial source).

## II. *CHALLENGE TO JUSTICE STEFFEN*

First, appellant contends that JUSTICE STEFFEN should be disqualified on the ground of implied bias. Specifically, appellant asserts that JUSTICE STEFFEN "could be viewed as having an interest in the proceeding now on appeal, requiring his disqualification under NRS 1.225." Appellant, however, advances no further facts or legal argument whatsoever in his motions, or in his affidavits, in support of this allegation of implied bias. As Governor Bryan and the commission both contend, appellant's unsupported and conclusory allegation is legally insufficient to warrant disqualification. *See* State v. Logan, *supra;* State v. Scarborough, 410 P.2d 732, 734 (N.M. 1966) (disqualifying "interest" must be a present interest in the outcome of the proceeding, "not some indirect, remote, speculative, theoretical or possible interest"); *see also* United States v. Haldeman, 559 F.2d 31, 137 (D.C.Cir. 1976) (a disqualifying interest must emanate from an extrajudicial source and no cognizable disqualifying interest is demonstrated by mere allegation that a judge has

developed a personal stake in the conviction of various defendants). We conclude, therefore, that appellant's motions and affidavits are insufficient, as a matter of law, to establish that JUSTICE STEFFEN should be disqualified from these proceedings on the ground of implied bias.

Second, appellant maintains that JUSTICE STEFFEN should be disqualified on the grounds of actual bias or prejudice. As noted, appellant bases his contentions respecting actual bias and prejudice upon a document executed by JUSTICE STEFFEN entitled, "Certificate In Lieu of Record." On its face, however, that document contains no facts demonstrating that JUSTICE STEFFEN lacks impartiality or possesses fixed opinions on the merits of these appeals. See United States v. Grinnell Corp., 384 U.S. 563, 583 (1966). The only fixed opinion expressed in the certificate is JUSTICE STEFFEN's statement that no commitment could be made to appellant that his temporary departure from his duties would foreclose further proceedings respecting appellant's fitness for office. It cannot reasonably be said that such an opinion gives "fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." See Berger v. United States, 255 U.S. 22, 33-34 (1921).

Appellant also contends, in support of his allegation of actual bias, that because JUSTICE STEFFEN authored the certificate in lieu of record, JUSTICE STEFFEN's impartiality might reasonably be questioned and therefore his disqualification from these proceedings is warranted. See Nev. Code of Judicial Conduct Canon 3. In this regard, appellant asserts, without further explanation, that an issue on appeal is the "legal effect" of the certificate. Further, appellant maintains that the certificate demonstrates that JUSTICE STEFFEN "offered evidence" in support of the defenses raised by the Governor below. Appellant also maintains that the certificate demonstrates that JUSTICE STEFFEN has obtained knowledge of disputed evidentiary facts at issue in these appeals. We disagree.

As noted, the certificate in lieu of record is an official document of the court promulgated in lieu of an evidentiary record respecting administrative proceedings that culminated in the issuance of the court's administrative order of October 19, 1987.[5] See, e.g., NRAP 10(c),(e) (in the absence of a report of the evidence or proceedings, the parties and the court may certify a

---

[5]As previously noted, that order did no more than temporarily preclude appellant, who himself had acknowledged that he was temporarily unfit for judicial service, from attempting to exercise judicial prerogatives without gaining the approval of the court.

statement of the evidence or proceedings in lieu of a record). Further, after appellant objected to the admission of the certificate below, which was offered by respondent Governor Bryan as evidence, Judge Fondi sustained appellant's objection and refused to consider the document. Thus, appellant has failed to demonstrate that the judgment below was based on "material" evidence offered by JUSTICE STEFFEN. *See* Nev. Code of Judicial Conduct Canon 3C(1)(b).

Additionally, the matters set forth in the certificate clearly demonstrate that JUSTICE STEFFEN had been engaged in an official inquiry on behalf of the court, relating to the supreme court's official responsibilities to see that litigation is properly processed and decided, and JUSTICE STEFFEN was therefore acting *in an official administrative and judicial capacity.* The general rule of law is that what a judge learns in his official capacity does not result in disqualification. *See* Smith v. District Court For Fourth Judicial Dist., 629 P.2d 1055, 1057 (Colo. 1981).[6] The facts contained in JUSTICE STEFFEN's certificate in lieu of record demonstrate, at most, an awareness of facts acquired through his participation in related judicial and administrative proceedings. Therefore, appellant's motions and affidavits allege no facts supporting a reasonable inference of bias stemming from an extrajudicial source. *See* United States v. Haldeman, 559 F.2d at 133 n.301. Consequently, we conclude that appellant has failed to establish legally cognizable grounds for JUSTICE STEFFEN's disqualification under NRS 1.225 or the Nevada Code of Judicial Conduct on the basis of actual bias or prejudice.

## III. *REMAINING CONTENTIONS*

Appellant also asserts that concerns over the justices' impartiality are raised by the "apparent lack of constitutional authority" underlying the court's administrative inquiry into reports raising concerns over appellant's capacity to preside over litigation

---

[6]*See also* United States v. Grinnell Corp., 384 U.S. 563, 583 (1966) (alleged bias to be disqualifying must stem from an extrajudicial source); United States v. Conforte, 457 F.Supp. 641, 657 (D.Nev. 1978) (the *origin* of judge's impressions was inextricably bound up with judicial proceedings, thus, judge's alleged bias did not stem from extrajudicial source), *modified,* 624 F.2d 869 (9th Cir.), *cert. denied,* 449 U.S. 1012 (1980); State v. Rome, 685 P.2d 290 (Kan. 1984) (court rejected motion to disqualify justices of supreme court under Code of Judicial Conduct where motion was based on justices' prior involvement in litigant's removal from judicial office); United Nuclear Corp. v. General Atomic Co., 629 P.2d 231 (N.M. 1980) (under New Mexico constitution, as well as under Code of Judicial Conduct, alleged bias must be personal, not judicial), *appeal dismissed,* 451 U.S. 901 (1981).

impartially, temperately, and in a manner consistent with due process of law. Appellant maintains that the supreme court's authority to conduct such an inquiry also presents an issue on appeal. Contrary to appellant's allegation, there is substantial authority supporting the proposition that even in the absence of a specific constitutional or statutory authorization, under its general power of superintendence, a state supreme court may exercise its administrative authority to conduct an inquiry and take such action as is deemed necessary, short of removal of a judge from office. *See* Nev. Const. art. 6, § 19; In re Mussman, 289 A.2d 403 (N.H. 1972); Ransford v. Graham, 131 N.W.2d 201, 203 (Mich. 1964). *See also* Annotation, *Courts—Power to Remove or Suspend Judge,* 53 A.L.R.3d 882 (1973 & Supp. 1988).[7] Even where the court's prior judicial and administrative actions may support an inference that the justices in question possess legal opinions at odds with appellant's views of the court's constitutional authority, that fact does not constitute a legally cognizable ground for disqualification. *See* United States v. Haldeman, 559 F.2d at 136 n.332. We conclude, therefore, that appellant's allegations in this respect are legally insufficient to support his motions for disqualification.

## CONCLUSION

Finally, we observe that neither the directives of NRS 1.225, nor the provisions of the Nevada Code of Judicial Conduct, should be read to permit a litigant, through legally insufficient and unfounded allegations of bias, to manipulate the processes of an appellate court or to nullify the court's obligation under the constitution to review the type of determinations challenged in these appeals. *See* Nev. Const. art. 6, § 4 and § 21(1). In State v. Rome, 685 P.2d 290 (Kan. 1984), for example, a former judge, who had previously been removed from his judicial office, attempted to disqualify the entire Kansas Supreme Court from

---

[7]Additionally, we note that there is substantial authority establishing that the judiciary must possess those inherent powers that are reasonable and necessary "to carry out its mandated responsibility, and its powers and duties to administer Justice, if it is to be in reality a co-equal, independent Branch of our Government." *See* Commonwealth ex rel. Carroll v. Tate, 274 A.2d 193, 197 (Pa. 1971), *cert. denied,* 402 U.S. 974. *See also* Co. Commissioners v. Devine, 72 Nev. 57, 294 P.2d 366 (1956). In our view, the court's power, through its chief justice, to administer justice and the court system in this state, under Article 6, Section 19(1) of the Nevada Constitution, necessarily implies the inherent power to conduct a reasonable inquiry and investigation to determine whether an emergency of sufficient magnitude necessitates temporary reapportionment of the public's judicial business.

sitting in review of a subsequent decision of the Kansas Board for Discipline of Attorneys. The former judge alleged, in part, that the members of the Kansas Supreme Court should recuse themselves because of their prior involvement in the proceedings resulting in his removal from judicial office and because he had subsequently filed a lawsuit against the court. The Kansas high court examined the allegations of bias, concluded that they raised no justiciable issue, and summarily denied the request for recusal. In so doing, the Kansas court concluded that to permit such allegations to disqualify the court from discharging its supervisory duties over that state's bar would "nullify" those duties and "permit manipulation of the court." *Id.* at 296.[8] Similarly, in the instant proceedings, we conclude that appellant's complete failure to demonstrate any legally cognizable grounds for disqualification demands denial of his challenges to Justices Steffen and Young.[9]

Accordingly, and in the light of the above, we hereby deny appellant's motions in Docket Nos. 18259 and 18326 to disqualify Justices Young and Steffen from these proceedings.

Whitehead, D. J.,[10] and Robison, D. J.,[11] concur.

---

[8]*See also* Tynan v. United States, 376 F.2d 761 (D.C.Cir. 1967), *cert. denied,* 389 U.S. 845, wherein the court indicated that a federal statute respecting disqualification "never contemplated crippling our courts by disqualifying a judge," solely on the basis of a state of mind "acquired from evidence presented in the course of judicial proceedings before him. Any other construction would make the statute an intolerable obstruction to the efficient conduct of judicial proceedings, now none too speedy or effective." *Id.* at 765, *citing* Craven v. United States, 22 F.2d 605, 608 (1st Cir. 1927).

[9]We note that with the exception of two citations to cases of questionable relevance to the legal issues raised by appellant's motions, appellant cites no legal authorities which support his motions for disqualification under the facts and provisions upon which he relies.

[10]The Honorable Jerry C. Whitehead, Judge of the Second Judicial District Court, was designated by the Governor to sit in place of Justice Springer who is disqualified. Nev. Const. art. 6, § 4.

[11]The Honorable Norman C. Robison, Judge of the Ninth Judicial District Court, was designated by the Governor to sit in place of Justice Mowbray, who voluntarily disqualified himself. Nev. Const. art. 6, § 4.