138 Nev., Advance Opinion 12

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| SCOTT CANARELLI, BENEFICIARY OF THE SCOTT LYLE GRAVES CANARELLI IRREVOCABLE TRUST DATED FEBRUARY 24, 1998, Petitioner, vs. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE LINDA MARIE BELL, Respondents, and LAWRENCE D. CANARELLI; HEIDI CANARELLI; AND FRANK MARTIN, SPECIAL ADMINISTRATOR FOR THE ESTATE OF EDWARD C. LUBBERS, FORMER TRUSTEES, Real Parties in Interest. | No. 82299 |



FILED

MAR 24 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus or, alternatively, prohibition challenging the disqualification of a judge.

*Petition granted.*

Lewis Roca Rothgerber Christie LLP and Daniel F. Polsenberg and Abraham G. Smith, Las Vegas; Solomon Dwiggins & Freer, Ltd., and Dana A. Dwiggins and Craig D. Friedel, Las Vegas,
for Petitioner.

Campbell & Williams and J. Colby Williams, Philip R. Erwin, and Donald J. Campbell, Las Vegas,
for Real Parties in Interest.

Hayes Wakayama and Liane K. Wakayama, Las Vegas,
for Real Party in Interest Frank Martin, Special Administrator for the Estate of Edward C. Lubbers.

---

BEFORE THE SUPREME COURT, EN BANC.

## OPINION

By the Court, SILVER, J.:

In this writ proceeding, petitioner asks us to reinstate to a case a district court judge who was disqualified because her impartiality could reasonably be questioned after she reviewed notes, produced in discovery, that we later determined were privileged. *See Canarelli v. Eighth Judicial Dist. Court (Canarelli I)*, 136 Nev. 247, 464 P.3d 114 (2020). Because the alleged questionable impartiality does not arise from an extrajudicial source, we determine that the disqualification standard set forth in *Kirksey v. State*, 112 Nev. 980, 923 P.2d 1102 (1996), controls. Applying that standard, and reviewing the record here, we conclude that there is no evidence that Judge Gloria J. Sturman formed an opinion demonstrating deep-seated favoritism or antagonism against either party. Therefore, we conclude that the district court erred by disqualifying Judge Sturman.

## FACTS AND PROCEDURAL HISTORY

Petitioner Scott Canarelli is the beneficiary of the Scott Lyle Graves Canarelli Irrevocable Trust. Scott's parents, real parties in interest Lawrence and Heidi Canarelli, conveyed minority interests in their business entities to Scott, which Scott contributed to the Trust. They also made discretionary payments from the Trust to Scott. Lawrence and Heidi, along with their attorney, real party in interest Edward Lubbers, served as trustees (collectively, the former trustees). Lubbers became the sole trustee in 2013 after Lawrence and Heidi resigned. Lubbers thereafter entered into an agreement to sell the Trust's ownership in Lawrence and Heidi's business entities. After learning of the purchase agreement, Scott filed a petition to compel Lubbers to provide an inventory and accounting for the Trust and all information related to the purchase agreement. Lubbers retained counsel and kept notes reflecting his preparations for, and communications with, those attorneys. In early 2018, Lubbers passed away before Scott could obtain Lubbers' deposition.

During discovery, the former trustees inadvertently disclosed documents containing Lubbers' notes. They attempted to claw back the documents, arguing that Lubbers' notes were privileged. Scott moved for a determination of privilege, and the discovery commissioner found that portions of the notes were protected by attorney-client privilege and the work product doctrine, but other portions were discoverable. Scott and the former trustees objected to the commissioner's findings, and Judge Sturman conducted a hearing and proceeded to review Lubbers' notes in order to rule on the parties' objections. Judge Sturman generally adopted the discovery commissioner's recommendation, thereby allowing Scott to retain portions of Lubbers' notes. The former trustees obtained a stay and pursued writ relief, which we granted after concluding that Lubbers' notes were

SUPREME COURT
OF
NEVADA

(O) 1947A

3

privileged and undiscoverable. *Canarelli I*, 136 Nev. at 248, 464 P.3d at 117.

After we decided *Canarelli I*, the former trustees moved to disqualify Judge Sturman, challenging her ability to remain impartial after reviewing the privileged notes. The matter came before the chief judge. Judge Sturman filed an answer denying any bias or prejudice and asserting that her review of Lubbers' notes had not created any personal knowledge of the facts that would warrant disqualification under the canons of judicial ethics. The chief judge granted the disqualification motion, citing Nevada Code of Judicial Conduct (NCJC) Rule 2.11(A) and concluding Judge Sturman's impartiality may be reasonably questioned based on her review of Lubbers' notes. This writ petition followed.

## DISCUSSION

*We exercise our discretion to entertain the writ petition*

"A writ of mandamus is available to compel the performance of an act which the law . . . [requires] as a duty resulting from an office, trust or station, or to control a manifest abuse or an arbitrary or capricious exercise of discretion."[1] *Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 39, 175 P.3d 906, 907-08 (2008) (internal quotation marks and footnote omitted) (alterations in original). Mandamus is an extraordinary remedy, available only when there is no "plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170; *see also Cote H.*, 124 Nev. at 39, 175 P.3d at 908.

---

[1]Scott alternatively seeks a writ of prohibition. In light of Scott's requested relief, we consider his petition as one for a writ of mandamus.

The decision to entertain a petition for a writ of mandamus is within our sole discretion. *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). "Because an appeal is ordinarily an adequate remedy, this court generally declines to consider writ petitions challenging interlocutory district court orders." *Helfstein v. Eighth Judicial Dist. Court*, 131 Nev. 909, 912, 362 P.3d 91, 94 (2015). However, when a writ petition presents an opportunity to clarify an important issue of law and doing so serves judicial economy, we may elect to consider the petition. *Id.* Similarly, writ relief may be appropriate where the petition presents a matter of first impression and considerations of judicial economy support its review. *Humboldt Gen. Hosp. v. Sixth Judicial Dist. Court*, 132 Nev. 544, 547, 376 P.3d 167, 170 (2016).

Scott's writ petition raises a legal issue of first impression with statewide importance—the disqualification standard where the alleged bias originates from the judge's performance of her judicial duties rather than from an extrajudicial source. Additionally, clarifying the judicial disqualification standard serves judicial economy by providing guidance for future disqualification matters. We therefore elect to consider the writ petition.

Kirksey v. State *governs where the alleged bias arises from the judge's performance of her judicial duties*

"[A] judge has a general duty to sit, unless a judicial canon, statute, or rule requires the judge's disqualification." *Millen v. Eighth Judicial Dist. Court*, 122 Nev. 1245, 1253, 148 P.3d 694, 700 (2006); *see also* NCJC Rule 2.7 ("A judge shall hear and decide matters assigned to the judge, except when disqualification is required by Rule 2.11 or other law."). Judges are presumed to be unbiased, *Millen*, 122 Nev. at 1254, 148 P.3d at 701, and a judge's decision not to recuse herself will not be overturned

Supreme Court
of
Nevada

(O) 1947A

absent a clear abuse of discretion. *Rivero v. Rivero*, 125 Nev. 410, 439, 216 P.3d 213, 233 (2009), *overruled in part on other grounds by Romano v. Romano*, 138 Nev., Adv. Op. 1, 501 P.3d 980 (2022); *PETA v. Bobby Berosini, Ltd.*, 111 Nev. 431, 437, 894 P.2d 337, 341 (1995), *overruled on other grounds by Towbin Dodge, LLC v. Eighth Judicial Dist. Court*, 121 Nev. 251, 260-61, 112 P.3d 1063, 1069-70 (2005). But determining the proper disqualification standard is a question of law that we review de novo. *See Cannizzaro v. First Judicial Dist. Court*, 136 Nev. 315, 317, 466 P.3d 529, 531 (2020) (addressing attorney disqualification and explaining that this court reviews de novo the interpretation of the rules governing the appropriate standard for disqualification).

Scott argues that the district court erred by applying NCJC Rule 2.11(A) because *Kirksey v. State*, 112 Nev. 980, 923 P.2d 1102 (1996), provides the proper disqualification standard. He contends Judge Sturman did not exhibit the favoritism or antagonism required by *Kirksey* to warrant disqualification. We agree.

Generally, "what a judge learns in his official capacity does not result in disqualification," so a party alleging judicial bias "must show that the judge learned prejudicial information from an extrajudicial source." *Kirksey*, 112 Nev. at 1007, 923 P.2d at 1119 (internal quotation marks omitted); *see also Whitehead v. Nev. Comm'n on Judicial Discipline*, 110 Nev. 380, 428 n.45, 873 P.2d 946, 976 n.45 (1994) (noting "the rule that a disqualifying bias must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case"). An extrajudicial source of bias is predicated on "something other than rulings, opinions formed, or statements made by the judge during the course of trial." 48A C.J.S. Judges § 252 (2014).

Considering that principle, we held in *Kirksey* that where the alleged bias does not stem from an extrajudicial source, the party seeking disqualification must show the judge formed an opinion based on the facts introduced during the proceedings and that this "opinion displays 'a deep-seated favoritism or antagonism that would make fair judgment impossible.'" 112 Nev. at 1007, 923 P.2d at 1119 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

In this case, the source of alleged bias comes from Judge Sturman's review of privileged notes. Judge Sturman reviewed those notes to resolve the parties' discovery dispute—a pretrial matter that was a core function of Judge Sturman's job as a judge and that she had a duty to decide, and one that she could not have reasonably decided without reviewing those notes herself.[2] Although Judge Sturman acted in her official capacity, the former trustees urge us to apply NCJC Rule 2.11(A) in lieu of the general rule we established in *Kirksey*. NCJC Rule 2.11(A)(1) requires a judge to recuse herself "in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances: (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or has personal knowledge of facts that are in dispute in the proceeding." The remaining circumstances described in NCJC Rule 2.11(A)(2)-(6) concern bias arising from an extrajudicial source. *See* NCJC Rule 2.11(A)(2) (when someone closely related to the judge is involved in the proceeding); NCJC Rule 2.11(A)(3) (when the judge or the judge's fiduciary or close family member "has an economic interest in" the

---

[2]Judge Sturman averred that she was not biased or prejudiced against any party or attorney, and the former trustees do not contest this assertion.

SUPREME COURT
OF
NEVADA

(O) 1947A

case); NCJC Rule 2.11(A)(5) (when the judge made an extrajudicial public statement "that commits or appears to commit the judge to reach a particular result"); NCJC Rule 2.11(A)(6) (when the judge was substantively involved in the matter before becoming the presiding judge on that case). Because the situations described in NCJC Rule 2.11(A)(2)-(6) concern extrajudicial sources of potential bias, we interpret NCJC Rule 2.11(A)(1) to concern extrajudicial bias as well. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) ("A legal instrument typically contains many interrelated parts that make up the whole. The entirety of the document thus provides the context for each of its parts.").

We also turn to *Liteky v. United States*, where the United States Supreme Court considered a similar issue. In that case, the Court applied the extrajudicial source doctrine to a federal statute that, like NCJC Rule 2.11(A), requires recusal "whenever 'impartiality might reasonably be questioned.'" 510 U.S. 540, 548, 554 (1994) (quoting 28 U.S.C. § 455(a)). The Court explained that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555. Because our standard in *Kirksey* is derived from *Liteky*, and in that case the Court concluded that the extrajudicial source doctrine applied to a federal statute that is similar to NCJC Rule 2.11(A), we see no reason to deviate from this line of

reasoning.[3] *Liteky*, 510 U.S. at 553; *Kirksey*, 112 Nev. at 1007, 923 P.2d at 1119.

Maintaining confidence in the judiciary's independence and impartiality is important, but we cannot hold that NCJC Rule 2.11(A) requires disqualification for *every* situation in which a judge is exposed to prejudicial evidence while ruling on evidentiary disputes. To do so would encroach on a judge's duty to preside over his or her assigned cases. Judges deciding motions in limine or motions to suppress often must review extremely prejudicial evidence to determine whether that evidence is admissible. For example, a judge ruling on a motion to suppress an involuntary confession must review the defendant's confession and the underlying circumstances under which the defendant confessed. *See, e.g., Passama v. State*, 103 Nev. 212, 215-16, 735 P.2d 321, 323-24 (1987) (reviewing the transcript of the defendant's confession to conclude that the defendant's confession was involuntary). Broadly applying NCJC Rule 2.11(A) under such circumstances would open the door for a motion to recuse every time any judge or justice reviews inadmissible evidence as part of their judicial duties, simply because the party seeking to exclude the evidence could later assert the evidence is so prejudicial that reviewing it

_____

[3]Although the *Liteky* concurrence opined that "a nearly dispositive extrajudicial source factor" was unnecessary because "district and appellate judges possess the wisdom and good sense to distinguish substantial from insufficient allegations," 510 U.S. at 565 (Kennedy, J., concurring), we decline to adopt that position or deviate from the *Liteky* majority, as under the dissent's lower standard, a party's subjective assertion—that the evidence to be admitted or excluded is such that merely reviewing it creates an appearance of bias—is sufficient to implicate NCJC Rule 2.11(A) and require recusal even when the judge avers that he or she can remain impartial.

necessarily raises the appearance of impartiality. *See City of Las Vegas Downtown Redev. Agency v. Hecht*, 113 Nev. 644, 649, 940 P.2d 134, 138 (1997) ("A lawyer should not be permitted to create a situation involving a judge and then claim that the judge should be disqualified because of the events the attorney created."). Moreover, abiding by the former trustees' proposed solution of having other judges determine such matters would hinder judicial efficiency, as judges would be forced to intervene in each other's cases whenever a party asserts that the inadmissible evidence *might* cause the presiding judge to exude bias. Instead, we follow our long tradition of expecting judges, including every one of our limited jurisdiction judges in the State of Nevada, to disregard improper, inadmissible, or impalpable evidence and base their findings and decisions on only admissible evidence. *State, Dep't of Highways v. Campbell*, 80 Nev. 23, 33, 388 P.2d 733, 738 (1964) ("[W]here inadmissible evidence has been received by the court, sitting without a jury, and there is other substantial evidence upon which the court based its findings, the court will be presumed to have disregarded the improper evidence."); *see also Randell v. State*, 109 Nev. 5, 7-8, 846 P.2d 278, 280 (1993) (explaining that, when sentencing, judges are able to listen to the victim impact statements without undue influence because "[j]udges spend much of their professional lives separating the wheat from the chaff" (internal quotation marks omitted)). Therefore, we conclude that what a judge learns during the course of performing judicial duties generally does not warrant disqualification unless the judge forms an opinion that "displays 'a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Kirksey*, 112 Nev. at 1007, 923 P.2d at 1119 (quoting *Liteky*, 510 U.S. at 555).

SUPREME COURT
OF
NEVADA

(O) 1947A

10

Accordingly, because nothing in the record indicates that the question of partiality comes from an extrajudicial source, we do not apply NCJC Rule 2.11(A). Instead, because Judge Sturman gained knowledge of the alleged prejudicial facts while acting in her official capacity, *Kirksey* governs here. Applying that standard, Judge Sturman averred she was not biased or prejudiced, and nothing in the record shows she formed an opinion displaying deep-seated bias that would warrant disqualification under *Kirksey*. We therefore conclude that the district court abused its discretion by applying the NCJC Rule 2.11(A) standard to disqualify Judge Sturman.[4]

## CONCLUSION

When the alleged bias or question of partiality arises from a judge's exercise of her duties, the party seeking the judge's disqualification must show that the judge has formed an opinion displaying deep-seated favoritism or antagonism toward the party that would prevent fair judgment. *Kirksey*, 112 Nev. at 1007, 923 P.2d at 1119. Because the record does not show that Judge Sturman's review of Lubbers' notes created such bias or prejudice against the former trustees, we conclude that the district court abused its discretion by disqualifying Judge Sturman.[5] Accordingly,

---

[4]Scott also argues the district court abused its discretion by failing to address whether the former trustees waived their argument regarding attorney-client privilege. We need not reach this issue in light of our decision.

[5]Our disposition moots the pending motion for leave to submit privileged material for *in camera* review. Accordingly, we deny real parties in interest's motion.

SUPREME COURT
OF
NEVADA

(O) 1947A

we grant the petition for writ relief and direct the clerk of this court to issue a writ of mandamus instructing the chief judge to reinstate Judge Sturman as the presiding judge in the underlying matter.

_____, J.
Silver

We concur:

_____ C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Stiglich

CADISH, J., with whom PICKERING and HERNDON, JJ., agree, dissenting:

I believe the majority applies an incorrect standard to the disqualification motion in this case, and I therefore dissent. The majority holds that NCJC Rule 2.11(A)'s objective standard does not even apply to a disqualification challenge where the source of the alleged judicial bias is not extrajudicial, and instead, adopts a significantly higher standard for disqualification in such circumstances. Because no textual basis for these distinctions exists in the applicable rule, and the majority's disqualification standard undermines public confidence in the integrity of the judiciary, I cannot agree.

The Nevada Code of Judicial Conduct provides, in pertinent part, that a judge must

> disqualify himself or herself in any proceeding in which the judge's impartiality *might reasonably be questioned*, including but not limited to the following circumstances: (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

NCJC Rule 2.11(A) (emphasis added). We have previously recognized that Rule 2.11(A) adopts an objective approach to judicial disqualification, *PETA v. Bobby Berosini, Ltd.*, 111 Nev. 431, 436, 894 P.2d 337, 340 (1995) (per curiam) (noting that "the test for whether a judge's impartiality might reasonably be questioned is objective; whether a judge is actually impartial is not material"), *overruled in part on other grounds by Towbin Dodge, LLC v. Eighth Judicial Dist. Court*, 121 Nev. 251, 260-61, 112 P.3d 1063, 1069-70 (2005), and accordingly, reflects the Code of Judicial Conduct's "primary policy . . . 'to promote public confidence in the judiciary,'" *Millen v. Eighth*

SUPREME COURT
OF
NEVADA

(O) 1947A

*Judicial Dist. Court*, 122 Nev. 1245, 1255, 148 P.3d 694, 701 (2006) (quoting *Hogan v. Warden*, 112 Nev. 553, 558, 916 P.2d 805, 808 (1996)).

Nevertheless, the majority all but ignores this standard and our caselaw applying it. *See, e.g., Ybarra v. State*, 127 Nev. 47, 51-52, 247 P.3d 269, 272-73 (2011) (applying an objective standard for disqualification of whether a "person [would] reasonably . . . doubt" the judge's "impartiality"). Instead, it concludes that when the source of alleged bias comes from the judge's performance of her duties in the case, disqualification requires a showing of "a deep-seated favoritism or antagonism that would make fair judgment impossible." Majority at 7 (quoting *Kirksey v. State*, 112 Nev. 980, 1007, 923 P.2d 1102, 1119 (1996) (per curiam)). The majority's conclusion imposes a much higher standard for disqualification than the objective standard of whether a "judge's impartiality might reasonably be questioned" based on her "personal knowledge," "personal bias," or personal "prejudice concerning a party or a party's lawyer," as set forth in Rule 2.11(A)(1). While Rule 2.11(A) requires disqualification even for the appearance of partiality, the majority's standard requires not just actual partiality but what amounts to extreme "favoritism" or "antagonism" that renders "fair judgment *impossible*." Majority at 10 (emphasis added) (internal quotation marks omitted) (quoting *Kirksey*, 112 Nev. at 1007, 923 P.2d at 1119). While such circumstances likely occur rarely, those circumstances that the majority's standard does not capture still threaten to undermine "public confidence in [the judiciary's] independence, impartiality, integrity, and competence." *See* NCJC Preamble.

The majority's standard also lacks textual support. The majority attempts to write its standard into Rule 2.11(A) solely because other "situations described in [Rule 2.11(A)] concern extrajudicial sources

SUPREME COURT
OF
NEVADA

(O) 1947A

of potential bias." Majority at 8. There is no reason, and certainly no basis in the text of the Code of Judicial Conduct, to simply toss out the objective standard because the source of the judge's alleged partiality arose from her duties as a judge. Contrary to the majority's reasoning, Rule 2.11(A) focuses on the extent to which the judge's "impartiality might reasonably be questioned," not on the source of the bias, as dispositive to the need for disqualification. I cannot agree that a "personal bias or prejudice concerning a party or a party's lawyer" does not warrant disqualification if it developed from information learned during the course of the judge's duties but does warrant disqualification if the same information came from an extrajudicial source. Yet the majority's standard produces such a result.

Further, the circumstances which compel disqualification, and on which the majority rely to conclude that Rule 2.11(A) concerns only extrajudicial sources, are not exhaustive. NCJC Rule 2.11(A) (requiring disqualification "in any proceeding in which the judge's impartiality might reasonably be questioned, *including but not limited to* the" provided circumstances (emphasis added)). The comment suggests the same: "Under this Rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless of whether any of the specific provisions of paragraphs (A)(1) through (6) apply." NCJC Rule 2.11 cmt. 1. Because the text does not distinguish between the sources of bias, I cannot agree with the majority's decision to treat disqualification differently depending on where the source of bias developed.

The majority's reliance on our decision in *Kirksey v. State*, 112 Nev. 980, 923 P.2d 1102 (1996), is misplaced. There, we applied the U.S. Supreme Court's standard in *Liteky v. United States*, 510 U.S. 540 (1994), to govern disqualification under NRS 1.230, rather than Rule 2.11(A), based

on the judge's acquisition of allegedly "prejudicial information" from the current proceedings. *See Kirksey*, 112 Nev. at 1005-07, 923 P.2d at 1118-19. We stated that the *Liteky* standard applied to the disqualification challenge because the source of the alleged bias was not extrajudicial.[1] *Id.* at 1007, 923 P.2d at 1119. However, our application of *Liteky* arose under NRS 1.230, which does not contain Rule 2.11(A)'s objective standard. *See id.* at 1005, 923 P.2d at 1118. Instead, it provides for disqualification if "the judge entertains *actual* bias or prejudice," or if "implied bias exists" based on the judge's relationship to the parties. *See id.* (emphasis added) (quoting NRS 1.230(1)-(2)). Moreover, the petitioner there argued that the judge was actually biased, not that his impartiality could reasonably be questioned under an objective standard, and accordingly, we held only that the *Liteky* standard applied to such allegations of actual bias under NRS 1.230, without citation or reference to Rule 2.11(A). We then concluded that the petitioner had failed to show that the information established actual bias or "a deep-seated favoritism or antagonism that would make fair judgment

---

[1]In deeming the source of bias relevant to disqualification under NRS 1.230, we relied on our decision in *Goldman v. Bryan*, 104 Nev. 644, 764 P.2d 1296 (1988), *overruled in part on other grounds by Halverson v. Hardcastle*, 123 Nev. 245, 265, 163 P.3d 428, 442-43 (2007). *See Kirksey*, 112 Nev. at 1007, 923 P.2d at 1119. In *Goldman*, we addressed an allegation of actual bias and noted the "general rule" that knowledge acquired in a judge's "official capacity does not result in disqualification." 104 Nev. at 653, 764 P.2d at 1301. But we did not meaningfully discuss Rule 2.11(A) as it then existed, and our conclusion that the appellant failed to establish "a reasonable inference of bias stemming from an extrajudicial source" did not foreclose disqualification based on information acquired during official court proceedings. *See id.* at 652-53, 764 P.2d at 1301-02; *cf. Allum v. Valley Bank of Nev.*, 112 Nev. 591, 593-94, 915 P.2d 895, 897 (1996) ("We have specifically held that a judge is not disqualified *merely* because of his or her judicial rulings." (emphasis added)).

impossible." *Id.* at 1007, 923 P.2d at 1119 (quoting *Liteky*, 510 U.S. at 555). Thus, *Kirksey* did not address whether or how this standard applies to Rule 2.11(A), and therefore, it does not govern our decision here.

The majority's reliance on *Liteky* here is similarly flawed because Rule 2.11(A)'s objective standard allows consideration of the source of the bias as relevant to disqualification and does not have the same jurisprudential development on which *Liteky*'s creation of a heightened standard relied. *Liteky* considered whether the extrajudicial-source doctrine, which had developed from and applied to a specific federal disqualification provision of 28 U.S.C. § 144 related to bias or prejudice (requiring disqualification of a judge who harbors "personal bias or prejudice" against a party), also applied to the newly created "'catchall' recusal provision" of 28 U.S.C. § 455(a) (requiring disqualification "in any proceeding in which [a judge's] impartiality might reasonably be questioned"). *Liteky*, 510 U.S. at 541, 544, 548.

The Court reasoned that the extrajudicial-source doctrine in the context of § 144's "bias or prejudice" standard reflected an attempt to delineate between "a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess, . . . or because it is excessive in degree." *Id.* at 550 (emphasis omitted). Similarly, the court reasoned that "partiality," as contained in § 455(a), "does not refer to all favoritism, but only to such as is, for some reason, wrongful or inappropriate." *Id.* at 552. Accordingly, the court concluded that the extrajudicial-source doctrine of the bias-or-prejudice standard of § 144 applied to the objective standard of § 455(a). *Id.* at 554.

Nevertheless, the Court recognized that the source of a judge's bias or prejudice neither necessarily gives rise to disqualifying bias nor "necessarily precludes [disqualifying] bias." *Id.* at 554-55 (describing "the existence of a significant (and often determinative) 'extrajudicial source'" as a "factor" (emphasis omitted)). Similarly, the objective standard in Rule 2.11(A) impliedly allows consideration of the source of the bias to determine whether a person might reasonably question the judge's impartiality.

Notwithstanding that the U.S. Supreme Court viewed the extrajudicial-source doctrine as only a factor, it then held, with no citation to authority, that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. The Court appeared to justify its holding on the belief that "as a practical matter," the sort of wrongful or inappropriate "predispositions" that warrant disqualification "rarely" develop "during the course of" judicial proceedings. *Id.* at 551, 554. While the observation may be true, that fact alone does not justify a heightened standard for disqualification. As Justice Kennedy noted in his concurrence, the Court's rule for intrajudicial and extrajudicial sources of bias did not derive from the text of the federal statute. *Id.* at 558 (Kennedy, J., concurring in the judgment only). Similarly, as I note above, Rule 2.11(A) does not delineate between the sources of bias and does not contain the majority's standard for disqualification based on intrajudicial sources of bias. Instead, the text of Rule 2.11 focuses on "the appearance of partiality." *See id.* at 563 (Kennedy, J., concurring); *see also PETA*, 111 Nev. at 436, 894 P.2d at 340. The majority's emphasis on the source of the

bias or prejudice "distracts from the central inquiry" of whether the judge harbors partiality or displays an appearance of partiality. *See Liteky*, 510 U.S. at 558 (Kennedy, J., concurring).

Moreover, the majority says, as a reason to treat the source of bias as dispositive for the standard applied to the disqualification motion, that it "see[s] no reason to deviate" from *Liteky*'s creation of such a rule. Majority at 8. Aside from *Liteky*'s lack of textual basis, its rule derives from the belief that a heightened standard is necessary to identify only those sources that give rise to "wrongful or inappropriate" partiality as sufficient to trigger disqualification. *See Liteky*, 510 U.S. at 552-55. But as noted above, an objective standard, as Rule 2.11(A) contains, permits consideration of the source of bias, as well as the degree to which the source creates "reasonable doubts about [the judge's] impartiality," *PETA*, 111 Nev. at 438, 894 P.2d at 341, as relevant factors to whether the judge harbors or appears to harbor partiality, "without resort" to a heightened standard, *see Liteky*, 510 U.S. at 565 (Kennedy, J., concurring).

The majority also believes that the *Kirksey* standard preserves "judicial efficiency" because the objective standard would impede a judge's ability to decide "motions in limine or motions to suppress." Majority at 9-10. While I agree with the majority that Rule 2.11(A) does not warrant disqualification "for every situation in which a judge is exposed to prejudicial evidence while ruling on evidentiary disputes," Majority at 9, I do not share its concern that the objective standard yields such results or subjects judges to such challenges. In most circumstances, the judge's performance of her duties, such as ruling on common motions, would not cause a reasonable person to question the judge's impartiality. Judges are charged regularly with reviewing evidence ultimately found inadmissible,

and they are deemed capable of ignoring that evidence in ruling on a case's merits. Thus, I agree with Justice Kennedy's comments in his *Liteky* concurrence:

> Although the source of an alleged disqualification may be relevant in determining whether there is a reasonable appearance of impartiality, that determination can be explained in a straightforward manner without resort to a nearly dispositive extrajudicial source factor. . . . [D]istrict and appellate judges possess the wisdom and good sense to distinguish substantial from insufficient allegations and that our rules, as so interpreted, are sufficient to correct the occasional departure.

510 U.S. at 565 (Kennedy, J., concurring). I believe Judge Sturman acted appropriately in carrying out her duties to review the documents in question to evaluate whether they were privileged. Indeed, the district court here did not abuse its discretion when it found substantial evidence to support that Judge Sturman did not harbor any personal bias or prejudice because of her review of the privileged documents.

However, as noted above, Rule 2.11 directs the district court to consider both actual and ostensible partiality. *See* NCJC Rule 2.11(A). Turning to the district court's decision to disqualify Judge Sturman here, the court found "no evidence that Judge Sturman ha[d] formed an opinion that would make fair judgment impossible" but expressed concern that Judge Sturman's review of notes later deemed privileged—which "spoke directly on the merits of Mr. Canarelli's petitions" and "contained Mr. Lubbers's personal assessment of the risk faced by the Former Trustees"— would cause a reasonable person to question her impartiality "as the

SUPREME COURT
OF
NEVADA

(O) 1947A

8

ultimate trier of fact." I cannot find that the court abused its discretion in so holding. I therefore dissent.

_____, J.
Cadish

We concur:

_____, J.
Pickering

_____, J.
Herndon

SUPREME COURT
OF
NEVADA

(O) 1947A