142 Nev., Advance Opinion 5

## IN THE SUPREME COURT OF THE STATE OF NEVADA

THOMAS LAMONT WILLIAMS,
Petitioner,
vs.
THE SECOND JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
WASHOE; THE HONORABLE
KATHLEEN A. SIGURDSON,
DISTRICT JUDGE; AND THE
HONORABLE DAVID A. HARDY,
DISTRICT JUDGE,
Respondents,
    and
THE STATE OF NEVADA,
Real Party in Interest.

No. 90071

**FILED**

JAN 29 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus challenging a district court order denying a motion to disqualify the presiding district judge for bias in a criminal proceeding and seeking reassignment.

*Petition granted in part and denied in part.*

Katheryn Hickman, Alternate Public Defender, and Thomas L. Qualls, Deputy Alternate Public Defender, Washoe County,
for Petitioner.

Aaron D. Ford, Attorney General, Carson City; Christopher J. Hicks, District Attorney, and Kevin Naughton, Appellate Deputy District Attorney, Washoe County,
for Real Party in Interest.

26-04427

BEFORE THE SUPREME COURT, PICKERING, CADISH, and LEE, JJ.

*OPINION*

By the Court, PICKERING, J.:

This case addresses a writ petition implicating the presumption of innocence that underpins our criminal justice system. It arises from a criminal proceeding in which a defendant's motion to sever was denied in district court. While the denial itself was relatively routine, the order issuing that denial was anything but, giving rise to a motion to disqualify the district court judge for judicial bias. We are tasked with applying the standard for evaluating allegations of judicial bias sourced wholly from the proceedings themselves, as opposed to from an extrajudicial source, and with clarifying how that standard fits within this court's broader supervisory authority. We hold that even in the absence of statutorily disqualifying judicial bias, our supervisory authority may be invoked in exceedingly rare cases where reassignment is necessary to preserve public confidence and trust in the fairness of a judicial proceeding. Because this is one such rare case, we deny the writ petition to the extent it seeks disqualification based on actual judicial bias but grant it insofar as it seeks reassignment of the case to a different district judge.[1]

---

[1]We previously ordered the petition granted in part and denied in part and directed the clerk of this court to issue a writ of mandamus instructing the Second Judicial District Court to reassign this matter to a different judge for further proceedings. *Williams v. Second Jud. Dist. Ct.*, No. 90071, 2025 WL 3625633 (Nev. Dec. 12, 2025) (Order Granting in Part and Denying in Part Petition for Writ of Mandamus). Petitioner thereafter filed a motion to reissue the order as an opinion. No opposition was filed. We grant petitioner's unopposed motion to publish and issue this opinion in place of our prior unpublished disposition. *See* NRAP 36(e).

## I.

On June 30, 2023, police responded to a call at petitioner Thomas Williams's apartment in Sparks, Nevada. There, they found the body of Brandon McGaskey, who had been living with Williams in the apartment. Police testified at the preliminary hearing that when they later interviewed Williams, he admitted to shooting two rounds at McGaskey in self-defense during an argument in which McGaskey accused Williams of stealing McGaskey's fentanyl. According to the police report, security footage depicted Williams leaving his apartment around the time of the shooting with a black shoulder bag. When he was taken into custody approximately 12 hours after McGaskey's body was found, Williams was wearing what appeared to be the same black shoulder bag. At the preliminary hearing, multiple officers testified that this bag contained just over 2 grams of methamphetamines. Williams was arrested and charged with one count of murder with use of a firearm, one count of illegal possession of a firearm by a prohibited person, one count of possessing less than 14 grams of a Schedule I controlled substance (for the methamphetamines), and one count of being a habitual criminal.

The case was assigned to District Judge Kathleen A. Sigurdson. Williams filed a motion to sever the drug possession charge, requesting an evidentiary hearing "if necessary." The State's opposition represented that "[t]he black bag that the Defendant had with him was found to contain a digital scale, and approximately two grams of methamphetamine and six grams of fentanyl." This representation conflicted with the preliminary hearing testimony, where the State's own witnesses stated only that the bag contained methamphetamines and made no mention of fentanyl, and with the facts as stated in Williams's motion to sever.

The district court denied the motion to sever by written order. Although it did not hold an evidentiary hearing, it repeatedly made unnecessary findings as to Williams's guilt on the underlying charges. In its order, the court adopted the State's factually unsupported representation that the bag contained fentanyl to determine that the possession charge was part of the same transaction or occurrence as the murder charge and that the drug possession was admissible as res gestae on the murder charge. Rather than evaluate these questions legally, while reserving judgment on the merits of and facts underlying the charges, the court chose to explicitly reject Williams's self-defense claim at this early stage, stating its finding that Williams "killed McGaskey not in self-defense, but rather, for the methamphetamines and fentanyl." Indeed, the order repeated more than ten times that "this court finds" that McGaskey's killing was a "murder," though Williams had not yet had an opportunity to present evidence supporting his self-defense claim, to explain his prior statements to police, or to otherwise address the merits of the charges against him.

In response to this order, Williams filed a motion to disqualify Judge Sigurdson, asserting that her wholesale adoption of the State's conflicted facts and her prejudgment of Williams's guilt demonstrated actual bias or prejudice under NRS 1.230(1) and Rule 2.11(A)(1) of the Nevada Code of Judicial Conduct (NCJC). Judge Sigurdson responded by filing an affidavit stating that she "denies all allegations of bias" and "maintains she has and continues to act impartially." The matter was then referred to District Judge David A. Hardy, who denied Williams's motion to disqualify after finding no evidence of "deep-seated favoritism or antagonism" towards him.

Williams then filed this petition for a writ of mandamus asking this court to: (1) mandate Judge Sigurdson's disqualification, and (2) order that the matter be reassigned to a different district judge. The petition does not challenge Judge Sigurdson's denial of Williams's motion to sever; it targets only the district court's reliance upon the State's contested facts and its repeated findings of guilt. Notably, the State's answer to Williams's writ petition states that the black shoulder bag contained only methamphetamines, thereby realigning the State's factual account with the preliminary hearing testimony and with Williams's account, without directly recanting its prior reference to fentanyl.

## II.

### A.

"The decision to entertain a petition for a writ of mandamus is within our sole discretion." *Canarelli v. Eighth Jud. Dist. Ct.*, 138 Nev. 104, 106, 506 P.3d 334, 337 (2022). "Mandamus is an extraordinary remedy, available only when there is no 'plain, speedy and adequate remedy in the ordinary course of law.'" *Id.* at 106, 506 P.3d at 336-37 (quoting NRS 34.170). It is the appropriate vehicle to seek disqualification of a judge, *Towbin Dodge, LLC v. Eighth Jud. Dist. Ct.*, 121 Nev. 251, 254-55, 112 P.3d 1063, 1066 (2005), but a judge's decision not to recuse carries substantial weight and is thus reviewed for abuse of discretion, *Kirksey v. State*, 112 Nev. 980, 1006, 923 P.2d 1102, 1118 (1996).

NRS 1.230(1) provides that "[a] judge shall not act as such in an action or proceeding when the judge entertains actual bias or prejudice for or against one of the parties to the action." Judges are presumed to be unbiased. *Millen v. Eighth Jud. Dist. Ct.*, 122 Nev. 1245, 1254, 148 P.3d 694, 701 (2006). Rule 2.11(A) of the NCJC establishes an objective test for overcoming that presumption, requiring recusal "in any proceeding in which

the judge's impartiality might reasonably be questioned." *See Ybarra v. State*, 127 Nev. 47, 51, 247 P.3d 269, 271-72 (2011) (interpreting the NCJC as imposing an objective standard). The objective standard applies when the alleged bias arises from an extrajudicial source. *Canarelli*, 138 Nev. at 109, 506 P.3d at 339; *see Kirksey*, 112 Nev. at 1007, 923 P.2d at 1119.

A heightened standard, however, applies when the alleged bias arises during the judicial proceedings. In that event, Nevada courts apply the standard set forth in *Liteky v. United States*, 510 U.S. 540 (1994), which interpreted the federal judicial recusal statute, 28 U.S.C. § 455(a), to require disqualification only where "the judge forms an opinion that 'displays a deep-seated favoritism or antagonism that would make fair judgment *impossible.*'" *Canarelli*, 138 Nev. at 109, 506 P.3d at 339 (quoting *Liteky*, 510 U.S. at 554-55) (emphasis added); *see also Cameron v. State*, 114 Nev. 1281, 1283, 968 P.2d 1169, 1171 (1998) ("[R]emarks of a judge made in the context of a court proceeding are not considered indicative of improper bias or prejudice unless they show that the judge has closed his or her mind to the presentation of all evidence."); *but see Canarelli*, 138 Nev. at 111-12, 506 P.3d at 340-41 (Cadish, J., dissenting) (arguing to preserve the objective standard for evaluating intrajudicial bias and warning that "circumstances that the majority's standard does not capture still threaten to undermine 'public confidence in the judiciary's independence, impartiality, integrity, and competence'" (quoting NCJC Preamble)). Under *Liteky*, judicial rulings or comments on their own "almost never constitute a valid basis for a bias or partiality motion." 510 U.S. at 555; *see United States v. Young*, 45 F.3d 1405, 1414 (10th Cir. 1995) (upholding the denial of a motion to disqualify a judge who opined pretrial that "the obvious thing that's going to happen . . . is that [the defendant is] going to get convicted" because such

SUPREME COURT
OF
NEVADA

(O) 1947A

6

comments did not render fair judgment impossible); *United States v. Wecht*, 484 F.3d 194, 213-21 (3d Cir. 2007) (finding that the *Liteky* standard was not met by a litany of bias allegations against a district judge, including that the judge accepted swaths of prosecution evidence without explanation and prejudged the case).

But judicial bias of the narrow sort addressed in *Liteky* is not the only reason to reassign a case, and appellate courts' authority to do so is not derived exclusively from judicial recusal statutes. As federal caselaw recognizes, even "[a]bsent proof of personal bias requiring recusation [under federal statute]," appellate courts may nonetheless invoke their supervisory authority to reassign cases in "unusual circumstances where . . . assignment to a different judge 'is salutary and in the public interest, especially as it minimizes even a suspicion of partiality.'" *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977) (internal citation omitted) (interpreting 28 U.S.C. § 2106 and quoting *United States v. Simon*, 393 F.2d 90, 91 (2d Cir. 1968)). To determine whether to reassign under this distinct authority, courts evaluate three principal factors:

> (1) whether the original judge would reasonably be expected on remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous . . . , (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail [undue] waste and duplication [of judicial resources] out of proportion to any gain in preserving the appearance of fairness.

*Robin*, 553 F.2d at 10; *see also id.* at 11 (adding that these factors favor reassignment "where a judge has repeatedly adhered to an erroneous view after the error is called to his attention"); *United States v. Jacobs*, 855 F.2d 652, 656-57 (9th Cir. 1988) (concluding that even though the district judge

was not biased, reassignment was warranted by the *Robin* factors where the judge had erroneously dismissed an indictment, refused to correct the error after the mistake was raised, and then continued to make decisions indicating preference for the defendant); *California v. Montrose Chem. Corp. of Cal.*, 104 F.3d 1507, 1521-22 (9th Cir. 1997) (finding that although the party seeking reassignment for judicial bias had not properly raised the issue below, the court could nonetheless reassign by invoking its supervisory authority); *United States v. Peguero*, 367 Fed. App'x 170, 171-72 (2d Cir. 2010) (applying the *Robin* factors in the absence of personal bias). Failure to meet one of these two standards—under *Liteky* for judicial bias or under the *Robin* factors—does not foreclose reassignment where the other standard *is* satisfied. *See, e.g., In re Int'l Bus. Machs. Corp.*, 45 F.3d 641, 644-45 (2d Cir. 1995) (rejecting the argument that courts can only reassign cases if the standards arising under the federal recusal statutes, e.g., *Liteky*, are satisfied).

Indeed, in Nevada, appellate courts have, in rare circumstances, reassigned cases not to rectify judicial bias but on other grounds as well, such as to preserve the appearance of fairness or to facilitate court administration. *See, e.g., Wickliffe v. Sunrise Hosp., Inc.*, 104 Nev. 777, 783, 766 P.2d 1322, 1326-27 (1988) (reassigning absent a finding of judicial bias where the trial court "undermined" a case by failing to comply with supreme court instructions); *Fortunet, Inc. v. Playbook Publ'g, LLC*, No. 72930, 2019 WL 2725664, at *3 n.7 (Nev. June 25, 2019) (Order Affirming in Part, Reversing in Part, and Remanding) (rejecting a contention of judicial bias but nonetheless reassigning on remand "in light of the prior history of th[e] case, including the district court's sanction [requiring reversal], . . . so as to avoid the appearance of impropriety");

 

*Valley Health Sys., LLC v. Eighth Jud. Dist. Ct.*, No. 84330, 2022 WL 1788220, at *5 & n.5 (Nev. June 1, 2022) (Order Granting Petition) (applying the *Robin* factors and rejecting the argument that direct reassignment is only permissible via motion seeking disqualification based on judicial bias). This power comes from the Nevada Constitution itself. *See* Nev. Const. art. 6, § 19(1) (vesting this court with supervisory authority).

## B.

Williams argues that the district court order denying his motion to sever provides "unequivocal proof that Judge Sigurdson is not impartial or unbiased in this case" and therefore must be disqualified. He does not suggest any extrajudicial or preexisting bias against him. His petition instead rests on the order denying severance, and he challenges not the outcome of Judge Sigurdson's decision-making, but rather *how* she reached and stated her decision in that order. Because the bias alleged arises out of the judicial proceeding and so is not extrajudicial, his disqualification challenge implicates the formidable impossibility standard imposed by *Liteky* and *Canarelli*. *Canarelli*, 138 Nev. at 109-10, 506 P.3d at 338-39 (declining to apply NCJC Rule 2.11(A)'s objective standard to evaluate claims of bias arising solely from within the judicial proceeding).

The first question, then, is whether Judge Sigurdson's order demonstrates deep-seated favoritism towards the State or antagonism against Williams, such that fair judgment by her is impossible. *Id.* at 109, 506 P.3d at 339 (citing *Liteky*, 510 U.S. at 555). We conclude that it does not. The *Liteky* court explained that even a judge who becomes "exceedingly ill disposed towards the defendant" during the proceedings should not necessarily be disqualified for bias, "since [their] knowledge and the opinion it produced were properly and necessarily acquired in the course of the

Supreme Court
OF
Nevada

(O) 1947A

9

proceedings, and are indeed sometimes . . . necessary to completion of the judge's task." 510 U.S. at 550-51. Unless a judge demonstrates that their newly formed opinions are "so extreme" as to demonstrate "pervasive bias" that overrides their ability to fairly preside over a case, fair judgment is not *impossible*, and disqualification is not compelled. *Id.* at 551; *cf. United States v. Liggins*, 76 F.4th 500, 506-09 (6th Cir. 2023) (disqualifying a judge for "disparaging remarks" that "raise[d] the specter" of racial bias and discrimination). It is particularly difficult to conclude that such a high bar has been met from one order that provides no evidence that Judge Sigurdson possesses animus towards Williams beyond conclusions drawn from her stated understanding of the evidence, however unfounded. For his part, in his order denying the motion to disqualify, Judge Hardy correctly sought evidence of bias or partiality rising to the requisite "deep-seated favoritism or antagonism" and ultimately reached the same conclusion. We therefore reject Williams's argument that Judge Hardy applied the incorrect standard or abused his discretion in denying disqualification for actual bias.

Still, this case puts into relief the distinction between disqualification for judicial bias and reassignment based on other grounds. Though there is insufficient evidence to find that Judge Sigurdson harbors deep-seated and insurmountable antagonism against Williams, we cannot ignore the serious concerns raised about the district court's order. Specifically, both Judge Sigurdson's determination that McGaskey was the victim of murder and her rejection of Williams's self-defense claim were premature and inappropriate in an order denying severance of the drug possession charge, which required no such findings. *See W. Cab Co. v. Eighth Jud. Dist. Ct.*, 133 Nev. 65, 67, 390 P.3d 662, 667 (2017) (discussing

the principle of judicial restraint, calling for courts to reach only those issues necessary to resolve the case at hand). These extraneous findings, inexplicably repeated more than ten times, compromised the appearance of justice by prejudging Williams's guilt and deeming the shooting a murder before he had an opportunity to present his case. Further, the persistent reference to Williams's possession of methamphetamines *and fentanyl* suggests that these troublesome findings were rooted in the district court's uncritical acceptance of the State's unsupported factual account. But even after receiving notice of these issues, Judge Sigurdson declined to correct or explain her findings and instead filed an affidavit stating only that she did not possess a disqualifying bias.

Applying the *Robin* factors to this record, it is not clear to us that Judge Sigurdson would be able to put out of her mind previously expressed views or gratuitous findings determined to be erroneous—in fact, she has already suggested an unwillingness to do so when given the chance. *See Robin*, 553 F.2d at 10. Subjecting Williams to proceedings in which a judge has already found him guilty—and repeatedly went out of her way to make that finding explicit—would hollow out the guarantees of due process, most vitally the presumption of innocence, "a basic component of a fair trial under our system of criminal justice." *Watters v. State*, 129 Nev. 886, 889, 313 P.3d 243, 246 (2013) (quoting *Estelle v. Williams*, 425 U.S. 501, 503 (1976)). It would be both inefficient and unfair for this matter to proceed through pretrial, trial, and post-trial proceedings, at the end of which Williams would inevitably raise these concerns on appeal. *See Robin*, 553 F.2d at 11 (acknowledging that reassignment may be appropriate "to avoid 'an exercise in futility in which the Court is merely marching up the hill only to march right down again'" (quoting *United States v. Tucker*, 404 U.S.

SUPREME COURT
OF
NEVADA

(O) 1947A

11

443, 452 (1972) (Blackmun, J., dissenting)). Finally, given the early stage of this case, reassignment would not generate undue waste or duplication of judicial resources out of proportion to the significant gain in preserving the appearance of fairness. *See Valley Health*, 2022 WL 1788220, at *6 (applying the *Robin* factors and ordering reassignment based on the district judge's "conclusory findings and premature legal conclusions" implicating counsel in felonious activity without evidentiary support). We thus conclude that this case presents a rare instance in which, to preserve the presumption of innocence and the integrity of the justice system with it, reassignment under our supervisory authority is justified. *Cf. In re Int'l Bus. Machs. Corp.*, 45 F.3d at 645-46 (issuing a writ of mandamus to direct reassignment under extraordinary circumstances).

* * *

Accordingly, as previously ordered, while we deny the petition for writ relief to the extent it asks us to mandate that Judge Hardy disqualify Judge Sigurdson for judicial bias under NRS 1.230(1) and NCJC 2.11, we grant it in part, pursuant to our supervisory authority, and direct the clerk of this court to issue a writ of mandamus instructing the Second Judicial District Court to reassign this matter to a different judge for further proceedings.

_____, J.
Pickering

We concur:

_____, J.
Cadish

_____, J.
Lee